King *v.* Kirby.

[ALBANY GENERAL TERM, September 6, 1858. *Wright, Gould* and *Hogeboom*, Justices.]

———— •♦• ————

## KING *vs.* KIRBY.

A cause of action, originally within the exceptions of the act of 1831 to abolish imprisonment for debt, does not lose that character by being assigned to a third person.

The remedies provided by that act were intended to aid the enforcement of the claim, in whosever hands it might be ; provided the relation of the parties remained the same, and the cause of action had not been substantially changed.

Accordingly *held* that the assignee of a judgment recovered against a debtor for fraud and false and fraudulent representations, could institute proceedings under the. act of 1831, for the arrest and imprisonment of the judgment debtor ; especially where it appeared that some of the acts of fraud were committed after the assignment of the judgment.

THIS is a common law certiorari directed to his Honor Justice Gould, to review certain proceedings had before him under the non-imprisonment act of 1831, which resulted in the dis-

charge by him of the defendant Jacob B. Kirby from impris-
onment, " on the ground that the proceedings could not be
prosecuted by Harvey J. King as the assignee of the judgment."
The papers disclose a case of fraud, which, independent of
the question upon which the judge based the discharge, would
have authorized the arrest and imprisonment of the debtor
under the provisions of the non-imprisonment act of 1831.
(*Laws of* 1831, *ch.* 300.)   By the plaintiff's affidavits it ap-
peared that Kirby procured the acceptances of Norman Strat-
ton to the amount of $10,900, under false and fraudulent
representations as to the amount of his property, and fraudu-
lently disposed of a portion of his property.   Stratton having
recovered judgment for his demand to the amount of $9364.54,
on the 1st day of July, 1854, made a general assignment of his
property, including this judgment, to the plaintiff, for the ben-
efit of his creditors, on the 27th day of February, 1856.   Some
of the allegations of fraud, intended to show a fraudulent and
clandestine removal by Kirby of a portion of his personal
property out of the state with intent to defraud his creditors,
charged the last mentioned act as having occurred in the
month of September, 1856, six months or more after the as-
sigment to the plaintiff.   The defendant interposed before the
judge an affidavit denying the fraud charged in the plaintiff's
papers.   The merits of the case on the question of fraud were
not disposed of by the judge, but on the 30th day of April,
1858, he dismissed the proceedings and discharged the pris-
oner, on the ground that the proceedings could not be prose-
cuted by the assignee of the judgment.   The plaintiff obtained
from this court a common law certiorari, upon the return to
which the foregoing facts appeared, and the question was thus
presented for review.

*W. Barnes* and *H. G. Wheaton*, for the plaintiff.

*W. A. Beach*, for the defendant.

King *v.* Kirby.

*By the Court*, HOGEBOOM, J. Prior to the act of 1831, imprisonment was one of the remedies authorized by law to enforce the collection of debts. By that law this remedy was abolished, except in certain cases. The excepted cases were in general where there was an intended fraudulent removal, or a fraudulent concealment, or a fraudulent assignment or disposition of property ; or a fraudulent refusal to apply it to the payment of a debt ; or a fraudulent contracting of the debt or incurring of the obligation respecting which the suit was brought. It cannot be denied that the plaintiff's debt, as to the subject matter thereof, originally came within one or more of these exceptions, and the only question is whether it lost that character by being assigned to the present owner. I am clearly of opinion that it did not. The remedies provided by the law of 1831 were, I think, intended to aid the enforcement of the claim, in whose hands soever it was. Before the passage of the non-imprisonment act, the owner of the demand, whether the original creditor or his assignee, could imprison the debtor. That act limited the remedy to particular cases, mostly those tainted by fraud. And it made no distinction, any where, in regard to the person who owned the demand. No doubt it must be a demand of the description specified in the act, and if by assignment it can be shown to have lost its distinctive character, the remedies under that act are inapplicable. For example, the law authorized imprisonment in actions upon contract for moneys received in a fiduciary capacity. This was a peculiar relation, implying personal trust and confidence. It attached to the debt a kind of sacredness or solemnity of obligation which did not belong to debts of an ordinary character. If the nature of the debt or of the relation was changed by the consent of the parties, then the remedy was changed also. If the creditor and the debtor, standing in such relation to each other, had a general statement or settlement of accounts, and a general balance was struck for which the debtor gave his note or his bond, or his paper secured by a third person, I think then it would be placed upon the footing of an

ordinary debt—the relation of the parties would be materially changed, and the right of imprisonment gone. A suit brought upon such a demand would not, in a proper sense, be an action upon contract for moneys received in a fiduciary capacity. It would embrace demands for which imprisonment was not allowed; the plaintiff would rely for his recovery upon the account stated, or on the new security guarantied by a third person. The cause of action would be materially different from what it originally was.

But I am not able to see that any such consequence legitimately follows from the mere assignment of a demand, otherwise within the protection of the act of 1831. The debt retains its original character. It has around it still all those fraudulent attributes, as regards the debtor, which it originally possessed. It is not blended with any other claim. The parties have not in any way agreed to place it on a different footing. It is precisely in its original position, except that through the act of the original creditor it now belongs to a third person. I do not think this should affect the remedy. I cannot think the legislature ever contemplated any such result. Before the act the remedy would have existed in favor of the assignee, and the act itself makes no limitation of the remedy to the original creditor. It has been the practice, I think, to construe the benefit of the provisions as attaching as well to the substituted as the original creditor. An eminent commentator gives it this construction.

The act gives the remedy to the *plaintiff*. The provisions of the act must receive a liberal and benign construction to favor the evident intent of the legislature. This was to give or retain certain remedies for the collection of debts. The remedy attaches to, and follows, the debt. It is one of the means of its enforcement. Why should there be a departure from the ordinary rule? A party is entitled by law to an execution upon his judgment. He is no less so, though he may not be the original creditor. Before 1831 in all cases, and after 1831 in certain cases, he was entitled to an execution

King *v.* Kirby.

against the body, upon his judgment—and I think no less so in the case of the assignee, than the primary owner of the demand. The reason is, that imprisonment is a mode of collecting the debt, and the policy of the law is to favor the collection of debts. It is no respecter of persons, and regards the assignee of a demand, provided he be in fact the owner, with the same favor as the original contractor. Were this not so, then any assignment of a demand, voluntary or involuntary, by operation of law or the act of the party, would defeat the remedy by imprisonment. Accident—bankruptcy—death— *any* event which put the assets of the original owner into the hands of his creditors or other persons, would liberate the debtor. I cannot believe such to have been the policy or intent of the law. I think the legal remedies are designed to be preserved in all cases where the relation of the parties remains the same, and the cause of action has not been substantially changed.

In this particular case, also, some of the acts of fraud were committed after the present plaintiff acquired the ownership of the demand. This circumstance must have escaped the attention of the learned judge. I am of opinion that the order should be reversed, and the debtor held liable to arrest and imprisonment.

[ALBANY GENERAL TERM, September 6, 1858. *Wright, Gould* and *Hogeboom,* Justices.]