## KEELER v. DUNHAM et al.

(Supreme Court, Appellate Division, First Department.  June 15, 1906.)

**1. ASSIGNMENTS—CAUSE OF ACTION FOR DECEIT—ASSIGNABILITY.**

In view of Code Civ. Proc. § 3343, subd. 9, defining a personal injury as an actual injury to the person, an action for deceit is not for a personal injury, within section 1910, providing that any claim or demand can be transferred except where it is to recover damages for a personal injury or for breach of promise to marry.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Assignments, § 46.]

**2. FRAUD—COMPLAINT—SUFFICIENCY.**

A complaint alleging that defendants, who were president and treasurer of a corporation, caused a statement to be publicly circulated to the effect that the corporation had paid cash dividends for several months, and also authorized brokers selling stock in the corporation to state to intending purchasers that the net earnings of the corporation amounted to more than 1 per cent. per month, which statements were made, defendants knowing the same to be false, to plaintiff's assignors, who purchased stock in reliance thereon, and suffered injury thereby, stated a cause of action for deceit.

Action by George W. Keeler against Frank J. Dunham and another. Plaintiff's exceptions to dismissal of the complaint ordered to be heard by the Appellate Division in the first instance. Exceptions sustained, and new trial ordered.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

A. Walker Otis, for exceptant.
Peter B. Olney, for respondent Dunham.
Waldo G. Morse, for respondent Seaman.

INGRAHAM, J. When this case came on for trial before a jury, and counsel for the plaintiff having opened the case, the defendants united in a motion to dismiss the complaint, upon the ground that the causes of action set out in the complaint were not assignable; the plaintiff suing as assignee of the various causes of action set forth. This motion the court granted, to which the plaintiff excepted, and that exception was ordered to be heard by this court in the first instance.

The complaint sets up five causes of action in favor of five different persons, the plaintiff suing as assignee of these individuals. To sustain these causes of action, it is alleged that a domestic corporation, the National Graphophone Corporation, with a capital stock of $800,000 divided into 8,000 shares of the par value of $100 per share, was organized under the laws of this state; that the defendant Dunham was president and a director of the corporation, and the defendant Seaman was treasurer thereof; that at a meeting of the directors of said corporation held on the 28th day of April, 1899, at which the defendant Frank Dunham was present, a resolution was adopted, Dunham voting for it, that a dividend of 1 per cent. be declared out of the earnings of the corporation for the month of March, and a dividend of 1 per cent. be declared out of the earnings of the corporation for the month of April, payable on the 15th day of May, 1899; that these dividends were not made

from the surplus profits arising from the business of said corporation, to the knowledge of the defendants; that the making of such dividends, except from the surplus profits arising from the business of the corporation, was in violation of section 594 of the Penal Code; that notice of the declaration of said dividend was published on the 29th day of April, 1899, in various newspapers in New York City, the same being stated to be regular dividends of 1 per cent. for the months of March and April; that the company had no moneys to pay such dividends, and to realize sufficient funds to enable the corporation to make such payments the directors of the corporation on April 17, 1899, issued and delivered to a firm of stockbrokers in the city of New York certificates of capital stock of the corporation aggregating 500 shares, with authority to said brokers to sell the stock at 60 cents on the dollar; that defendants authorized said brokers to state to intending purchasers of said stock that the net earnings of said corporation amounted to more than 1 per cent. per month upon its capital stock; that such statements were made accordingly by said brokers to plaintiff's assignors; that said statements were false, to the knowledge of the defendants, and were made with intent to deceive intending purchasers of said stock, including plaintiff's assignors, by leading them to believe that said corporation was doing a highly prosperous business, when it was in fact doing a losing business; that during the succeeding two weeks the said brokers sold said stock to the public for from 66½ to 80 cents on the dollar, and on the 1st day of May, 1899, said brokers paid over to the said corporation from the proceeds of such sale the sum of $30,000; that the advance in the price of the stock in the open market was due to the fact that the public believed that the said corporation was doing a profitable business, and that said dividends declared on April 28, 1899, were declared from the surplus profits of said corporation for the months of March and April, 1899; that on May 15, 1899, the said two dividends of 1 per cent. each, amounting, in the aggregate, to the sum of $16,-000, were knowingly paid by the defendant Frank Seaman, as treasurer of said corporation, out of the money so realized from the sale of said stock, and not from the surplus profits arising from the business of said corporation. The complaint further alleges that at about the time of the declaration of said dividends, the directors of said corporation, including the defendant Dunham, and with the concurrence and co-operation of said Seaman, caused a statement to be circulated among the public to the effect that the corporation had been organized in 1896, and since November, 1897, had paid 17 consecutive monthly cash dividends of $8,000 each; that said statements were false, to the knowledge of the defendants, and were made with intent to deceive purchasers of the stock of said corporation by inducing them to believe that the net earnings of said corporation for the preceding 17 months had exceeded the sum of $8,000 per month, when in fact it had made no such earnings; that the surplus profits of said corporation were not sufficient to pay said dividends so declared; that the business of the corporation gradually decreased, and the value of its shares also decreased, and finally, on the 13th day of September, 1901, the corporation became insolvent and was dissolved; that during the years 1899 and 1900 the

plaintiff's assignor purchased in the open market 95 shares of the capital stock of said corporation at a price between 47 and 80 per cent., at a cost of $6,737.50; that the said assignor purchased said stock in the belief that the statements so made by the said directors were true, and that said directors were honestly conducting the affairs of the corporation, and that the dividends so declared were made and paid from the surplus profits arising from the business of said corporation; that the stock of the corporation is now worthless, and the assignor has been damaged by virtue of the premises in the sum of $5,972.50; and that the plaintiff's assignor duly assigned and delivered to the plaintiff the certificates of stock of said corporation so purchased by him, as aforesaid, and duly assigned to the plaintiff all his claims, demands, and rights of action against the defendants then vested in him by virtue of the premises.

The causes of action thus alleged are for deceit. The ground upon which the complaint was dismissed was that these causes of action, being in tort, were not assignable; and that is the ground upon which the dismissal is sought to be sustained.

Section 1909 of the Code of Civil Procedure provides that:

"Where a claim or demand can be transferred, the transfer thereof passes an interest which the transferee may enforce by an action or special proceeding * * * in his own name as the transferror might have done."

Section 1910 provides that:

"Any claim or demand can be transferred, except in one of the following cases: 1. Where it is to recover damages for a personal injury; or for a breach of promise to marry."

Subdivisions 2 and 3 have no application. This claim may therefore be transferred, and the transferee may sue in his own name, as the transferror might have done, unless the claim was to recover damages for a personal injury or for a breach of promise to marry.

Personal injuries are defined by section 3343 of the Code of Civil Procedure (subdivision 9):

"A 'personal injury' includes libel, slander, criminal conversation, seduction, and malicious prosecution; also an assault, battery, false imprisonment or other actionable injury to the person either of the plaintiff or of another."

Subdivision 10 of the same section provides:

"An 'injury to property' is an actionable act whereby the estate of another is lessened, other than a personal injury or the breach of a contract."

It would seem, from the language used in these sections of the Code, that this is not an action for a personal injury, and is therefore assignable. The assignability of a cause of action is not made to depend, by these provisions of the Code, upon the survival of a cause of action upon the death of a decedent. Section 1910 was substituted for sections 111 and 112 of the Code of Procedure. These sections did not expressly provide what causes of action were assignable, and the rule under the Revised Statutes was that a cause of action was not assignable unless it survived. The decisions based upon the test of survival of a cause of action have been rendered inapplicable by the adoption of the Code of Civil Procedure. The question, therefore, comes down to whether or

not an action for a deceit which has caused damage is a personal injury, within section 1910 of the Code of Civil Procedure. I think it is not. A "personal injury," as defined by subdivision 9 of section 3343 of the Code, is "actual injury to the person either of the plaintiff or of another." The plaintiff's person has not been injured by this fraud, which has resulted in a loss to him of $6,000. In Moore v. McKinstry, 37 Hun, 194, section 1910 of the Code of Civil Procedure was but incidentally mentioned, and the decision seems to have been based upon the Code of Procedure, as the assignment appears to have been executed on the 10th day of August, 1880, before the second part of the Code of Civil Procedure took effect. We think, however, that this question was in substance determined in Benedict v. Guardian Trust Co., 58 App. Div. 302, 68 N. Y. Supp. 1082, when the case was before this court upon a demurrer, and again on appeal from a judgment in favor of the plaintiff (91 App. Div. 103, 86 N. Y. Supp. 370, affirmed without opinion, 180 N. Y. 558, 73 N. E. 1120).

The learned counsel for the defendants seek to distinguish this case upon the ground that it there appeared that the defendants obtained some benefit from the fraud, while there is no such allegation in this case. But neither the assignability of a cause of action nor its survival depends upon the defendant's obtaining a benefit, but rather depends upon the nature of the wrong done to the plaintiff who seeks to recover. If the representations made by the defendants had been true, the plaintiff would have been the owner of shares of stock of a corporation which had earned 1 per cent. per month. As a fact, he was the owner of shares of stock which earned little or nothing, and it is to recover the damages which he sustained in consequence of the stock being worthless, instead of earning 12 per cent. a year, that he brings this action. As was said by Judge Hatch in Benedict v. Guardian Trust Co., 91 App. Div. 108, 86 N. Y. Supp. 374:

· "When restitution was demanded of the defendant, it made absolute refusal, and thereupon, for the purpose of redressing the wrong with the least possible complication, the several rights of action were consolidated in the plaintiffs, who constituted the committee, and the action was brought in a forum where redress for the wrong could be had in a single action. We think this course was commendable, and that it was better to treat this question and dispose of it in one action, rather than to multiply it by eighteen. No law interposes to prevent such a proceeding; on the contrary, it supports it."

See, also Squires v. Thompson, 73 App. Div. 552, 76 N. Y. Supp. 734. My conclusion is, therefore, that this cause of action was assignable, and it was error to dismiss the complaint upon that ground.

The defendants seek to sustain this demurrer upon the ground that no cause of action is alleged as no fraud is alleged. Leaving out the allegations of the complaint in regard to the declaration of the dividends, the complaint alleges that at the time of the declaration the directors of the corporation, including the defendant Dunham, and with the concurrence and co-operation of the defendant Seaman, caused a statement to be circulated against the public, to the effect that this corporation had paid 17 consecutive monthly cash dividends of $8,000 each; that the defendants authorized the brokers who sold the stock for the corporation to state to intending purchasers that the net earnings of the cor-

poration amounted to more than 1 per cent. per month, and that such statements were made by the brokers to the plaintiff's assignors. The falsity of this statement and scienter are then alleged, and that plaintiff's assignors purchased said stock relying on this statement so made by the directors, and believing it to be true, and that the dividends so declared were made and paid from surplus profits arising from the business of the corporation. I think this is a sufficient allegation to sustain the action for deceit against both defendants.

The exceptions should therefore be sustained, and a new trial ordered, with costs to the exceptant to abide the event. All concur.

BUSCHER v. NEW YORK TRANSP. CO.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. NEGLIGENCE—IMPUTED NEGLIGENCE—NEGLIGENCE OF PARENT.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 151–157.]

2. SAME—CARE RECEIVED OF CHILDREN—CARE DEPENDENT ON CAPACITY.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 121–129.]

O'Brien, P. J., dissenting.

Appeal from Trial Term, New York County.