ter Susanna Weber died, leaving three children her surviving. Subsequently, and at various times prior to the filing of the petition herein the three children of Susanna Weber died intestate, leaving no issue them surviving, and leaving their father as their sole next of kin. He is still living. The trustee therefore is presently interested in ascertaining to whom he should pay the income which the decedent directed his trustee to pay to his daughter Susanna Weber.

[1] The language of paragraph 3 of the will is free from ambiguity or indefiniteness. It expressly provides that two-thirds of the income shall be paid to the testator's three children during the life of Anna Maria Klumpf, the testator's widow. As Susanna Weber survived the testator, she took a vested interest in one-third of two-thirds of the income from testator's real estate during the life of the widow, and as she died intestate during the life of the widow her interest in the income passed to her husband and children, and upon the death of all the children intestate, leaving no issue and no husband or wife, their father, Conrad Weber, succeeded to their interest, and is entitled to two-ninths of the income from decedent's real estate during the life of testator's widow.

[2] The trustee also asks for a construction of that part of the will which provides for the disposition of the income as well as the corpus of the estate after the death of the life tenant. As the life tenant is still living, and this court will not, under section 2615, C. C. P., construe provisions of a will where there are no present payments of income to be made, or where the time has not arrived for the distribution of the principal, the question of construction of the other paragraphs of the will will be deferred until the death of the life tenant.

Submit decree accordingly.

---

(94 Misc. Rep. 112)

### In re BALL.

### In re CAULFIELD'S WILL.

#### (Surrogate's Court, Kings County. February, 1916.)

1. CONTEMPT &#9758;43—PUNISHMENT—PROCEEDINGS—PERSONS ENTITLED TO MAINTAIN.

   Though a court may of its own motion take cognizance of a civil contempt, the process by which private rights and grievances are to be vindicated by proceedings in contempt is available only to a party in whose person and estate the injury is sustained.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 125–127; Dec. Dig. &#9758;43.]

2. CONTEMPT &#9758;43—PROCEEDINGS TO PUNISH—WHO MAY MAINTAIN—"PARTY."

   In Judiciary Law (Consol. Laws, c. 30) § 753, authorizing the court to punish as for contempt certain forms of misconduct by which the right or remedy of a party may be defeated, impaired, impeded or prejudiced, and section 754, providing that process may issue if it be determined that the offense charged has so affected the rights or remedies of a party, the

---

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

term "a party" is equivalent to the moving party, the injured party, or the complaining party.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 125–127; Dec. Dig. ⊚⟶43.

For other definitions, see Words and Phrases, First and Second Series, Party.]

**3. CONTEMPT ⊚⟶43—PROCEEDINGS TO PUNISH—WHO MAY MAINTAIN—"AG-GRIEVED PARTY"—"COMPLAINANT."**

In Judiciary Law, § 773, authorizing a fine for civil contempt sufficient to indemnify the aggrieved party, and providing that, when an actual loss or injury is not shown, the fine must not exceed the complainant's costs and expenses, and $250 in addition, the "aggrieved party" and the "complainant" are regarded as identical. ·

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 125–127; Dec. Dig. ⊚⟶43.

For other definitions, see Words and Phrases, First and Second Series, Aggrieved Party; Complainant.]

**4. CONTEMPT ⊚⟶75—PROCEEDINGS TO PUNISH—EXTENT OF PUNISHMENT.**

Under Judiciary Law, § 761, providing that the order to show cause in civil contempts is equivalent to a notice of motion, and the subsequent proceedings thereon are taken·in the action or special proceeding, as on a motion made therein, on a motion to punish a testamentary trustee for contempt for failure to comply with a decree directing payment to certain persons not united in interest, the moving party is to be heard so far only as his proceeding covered his interest, and the fine imposed will be limited to the amount payable under the decree to the moving party.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 258–260; Dec. Dig. ⊚⟶75.]

Proceeding on the judicial settlement of the account of John Oscar Ball, as trustee under the last will and testament of Mary Caulfield. Heard on motion to punish the trustee for contempt. Motion granted in part.

Frederick H. Chase, of Brooklyn, for the motion.
A. P. Bachman, of New York City, opposed.

KETCHAM, S.  Upon this motion, to punish the respondent as for a contempt alleged to consist of misconduct in not obeying the directions for payment contained in a decree, there arises this question: Where a decree directs payments to separate persons not united in interest, may one of such persons solely upon his own motion obtain process by which the decretal debtor shall be fined in a sum representing the amounts payable under the decree to persons other than himself?          •

[1] It is a general rule, so far imbedded in the law that it is seldom displayed in argument, that nobody shall have any relief from a court unless he has an existing and remedial interest in the subject-matter involved.  Though a court may of its own motion take cognizance of a civil contempt, it seems plain from the origin and history of the jurisdiction over such matters that the process by which private rights and grievances are to be vindicated by proceedings in contempt is available only to a party in whose person and estate the injury is sustained,

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or to one who has succeeded him in interest. People ex rel. Munsell v. Court of Oyer & Terminer, 101 N. Y. 245, 4 N. E. 259, 54 Am. Rep. 691; King v. Barnes, 113 N. Y. 476, 21 N. E. 182; Hawley v. Bennett, 4 Paige, 163.

Once the power of the court was only asserted to enforce decorum, to support judicial authority, and to chastise insolence. In such cases, now recognized as criminal contempts, the court expended its force in punishment and took no heed of private grievance. But the jurisdiction was at an early day extended beyond public discipline or vengeance, and wherever the contumacious act was also "an injury or wrong done to a party who was a suitor before the court and had established a claim upon its protection the authority of the court was loaned to the suitor for his safety and vindicated for his sole benefit." People ex rel. Munsell v. Court of Oyer & Terminer, supra. Before such sovereign powers can be wielded in behalf of a private person for his personal ends, it is obvious, not only that the individual must be a suitor in such relation to the court that the injury to him is a constructive wrong to the court, but that since the arm of the court is lifted only for his redress he must be the only one to seek its defense. The forces of the law are "lent" to him, and to him alone.

[2] It is enacted that the court may punish as for a contempt certain forms of misconduct by which the right or remedy of a party may be "defeated, impaired, impeded or prejudiced" (Judiciary Law, § 753), and that the process may issue if it be determined that the offense charged has so affected the rights or remedies of "a party" (Judiciary Law, § 754). While the person whose rights and remedies are the subject of this statute is therein indicated only as "a party," it would involve a legislative absurdity if the language thus employed were construed to mean any party except the one who prayed for relief against the contempt alleged. There are many cases in which the courts, with an assurance which excludes all need for discussion, have read the statute as if in place of the words "a party" the words "the moving party," "the injured party," or "the complaining party" were used. Guerrier v. Coleman, 135 App. Div. 47, 119 N. Y. Supp. 895; Obermeyer & Liebman v. Adisky, 123 App. Div. 272, 107 N. Y. Supp. 949; Socialistic Co-op. Pub. Ass'n v. Kuhn, 51 App. Div. 583, 64 N. Y. Supp. 933; Dailey v. Fenton, 47 App. Div. 419, 62 N. Y. Supp. 337.

[3] Again, the Judiciary Law betrays a consciousness throughout its several provisions that the remedy is open only to "an aggrieved party." The fine to be imposed is one which shall be sufficient to indemnify an "aggrieved party." It is to be paid over to an "aggrieved party," and, again, its acceptance by an "aggrieved party" shall be a bar to an action by him to recover damages for the loss or injury. Judiciary Law, § 773. When an actual loss or injury is not shown the fine must not exceed "the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto," and this fine "must be collected and paid, in like manner" as is provided with respect to the compensatory fine. Judiciary Law, § 773. Thus the "aggrieved party" and "the complainant" are regarded as identical, and there is no fine contemplated which is not to be solved by a personal payment to him.

Fine and its payment are the primary purposes of the proceeding. Imprisonment is designed in large part only as a means of its enforcement. This makes it impossible that the rights of any party other than the one complaining can be assessed or enforced in the only order to which the latter may be entitled.

[4] It is provided as to the order to show cause in civil contempts that it "is equivalent to a notice of motion; and the subsequent proceedings thereupon are taken in the action or special proceeding, as upon a motion made therein." Judiciary Law, § 761. Under this language, unless judicial habits are to be wholly reversed, the moving party is to be heard so far only as his appeal covers his interests, and is to be only afforded such remedies as are suitable for their protection. In Hawley v. Bennett, supra, it was sought to punish a defendant for violation of an injunction. It appeared that the plaintiff at whose instance the injunction was granted was dead. The parties moving in the contempt proceeding claimed to be the trustees under the will of the deceased plaintiff, but there was no proof that the action had been revived in the name of such trustees. The court said:

"And where a person applies to the court to punish a party for a breach of an injunction, in the nature of a civil remedy, he must show that he has some interest in the subject-matter of the injunction, or that he has a right to prosecute for the breach thereof, except in the case of infants, lunatics, etc., who are unable to protect their own rights. The preliminary objection in this case, therefore, is well taken that it does not appear from any of the papers upon which this order was founded, or which have been served on the adverse party, that the persons who obtained that order have any interest in the subject-matter of the suit in which the injunction issued, or have any authority to prosecute for a breach thereof."

In People v. Diedrich, 141 Ill. 665, 30 N. E. 1038, a judgment had been entered generally enjoining the defendants from the manufacture of a certain article. This judgment was entered pursuant to an agreement intended as an adjustment of the claims of the respective parties; and the agreement provided that the defendants should have the exclusive right to sell the article in question in Illinois. The complainants moved to punish one of the defendants for selling the article in Illinois. Apparently the acts complained of were contrary to the universal form of the injunction. Process in the nature of contempt was denied, upon the ground that the only acts complained of were done in the territory in which the accused defendant had the exclusive right to sell the article and in which the complainants were to have no right whatever, the court saying:

"It was therefore incumbent upon them [the complainants], before asking the court to convict and punish him [the defendant], to show not merely a breach of the injunction, but also that they had in some way been injured thereby"—citing authorities.

In Secor v. Singleton, 35 Fed. 376, the Circuit Court for the Eastern District of Missouri, citing cases, says:

"It would seem to follow that an injunction obtained to protect a merely private right, is so far within the control of the party obtaining it, and is so far

a matter of individual concern, that only those persons who have a present interest in the right to be protected, can be heard to complain of its violation."

In Rapalje on Contempts, at page 175, it is stated, in contrast with criminal contempts, as follows:

"On the other hand, where the proceeding is simply to redress a private injury, the party seeking to act as prosecutor must have a substantial interest in the proceeding, except in the cases of infants, lunatics, habitual drunkards, etc., who are incapacitated to defend their own interests."

It has not been found possible to grant to the moving party the relief which he seeks in behalf of persons other than himself. The amount which the respondent is required to pay, as the balance now due upon a finding against him of $28,389.43, is $26,859.51, with interest thereon from September 14, 1915, at 6 per cent., and this sum must be the basis for the only compensatory fine to be imposed. To this extent the motion is granted.

Decreed accordingly.