In the Matter of the Petition of NATHAN LIEBERMAN for an Order Directing the Executors of the Estate of PHILIP SPRINGER, Deceased, to Pay to the Petitioner Counsel Fees and Disbursements for the Services Performed and Expenses Incurred by Him in the Estate of PHILIP SPRINGER, Deceased.*

AMELIA DECHER, Appellant; MORDECAI P. SPRINGER, Respondent.

First Department, May 12, 1933.

* Affg. 146 Misc. 445; appeal dismissed, 262 N. Y. 678.

*Irving W. Weinblatt* of counsel [*Nathan Lieberman*, attorney], for the appellant.

*Fred Jacobs*, for the respondent.

MARTIN, J. The respondent Mordecai P. Springer, one of the executors of the estate of Philip Springer, deceased, obtained an order from the Surrogate's Court, Bronx county, discharging him from the custody of the warden of the county jail of New York county, from the custody of the sheriff of the county of New York, and from the custody of his attorney. His application for an order vacating a previous order adjudging him in contempt of court and fining him $1,096.50, which sum he was directed to pay to Nathan Lieberman, and for an order vacating a warrant of commitment issued out of the said Surrogate's Court was denied. The matter was reargued and upon reargument the surrogate adhered to his previous determination.

On May 18, 1928, an order was entered directing the respondent to pay Nathan Lieberman $1,000 for counsel fees. On April 4, 1929, an order was entered adjudging respondent to be in contempt of court and fining him the sum of $1,096.50, to be paid to Nathan Lieberman. The respondent, prior to September, 1929, paid the sum of $500 on account of said indebtedness. On December 17, 1929, Nathan Lieberman made a written assignment to Amelia Decher of all his right, title and interest in and to the decree and the money directed to be paid to him pursuant thereto. The assignment was filed and recorded in the Surrogate's Court, Bronx county. On March 21, 1930, Nathan Lieberman filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of New York. On October 29, 1931, a decree on the final accounting was signed by the surrogate of Bronx county. On September 8, 1932, a warrant of commitment was obtained by Lieberman and delivered to the sheriff of New York county. On December 13, 1932, the respondent was committed to the county jail by the sheriff of New York county.

At the time the warrant of commitment was delivered to the sheriff the party to the original proceeding was no longer entitled to the payment required by the decree, by reason of the assignment. On December 14, 1932, a writ of habeas corpus was signed by a justice of the Supreme Court, and on the return thereof the justice suggested that the matter be taken before the surrogate for further consideration.

The application for the commitment was made by Lieberman, although at that time he was in bankruptcy and in addition had

assigned all his rights under the decree, which assignment was filed on August 15, 1931. The appellant Amelia Decher, the assignee, failed to secure an order in accordance with section 291 of the Surrogate's Court Act, substituting her as a party either to the proceeding in the Surrogate's Court or on this appeal. The respondent contends that the party in whose favor the order of contempt was made, having assigned all his rights in the decree, has lost his right to have this respondent committed for contempt. That alone should have been sufficient to warrant a denial of the application.

The contempt consisted in failing to perform an act personal to Lieberman, which the respondent was ordered by the court to perform for Lieberman's benefit in a proceeding then before the court in which he personally had certain rights. This contempt was a civil contempt and was not against the dignity of the court. Such a proceeding for contempt may be prosecuted by the aggrieved party only. (*Matter of Ball*, 94 Misc. 112.) The object of such a decree adjudging a party to be in contempt is to compel performance of an act to which a party to the proceeding is entitled, and is within the classification of civil contempt, and is based on the relation of the parties.

Section 753 of the Judiciary Law provides that the court has power to punish where *a right or remedy of a party to a civil action or special proceeding*, pending in the court, may be defeated, impaired, impeded or prejudiced.

In considering this question we must keep in mind the distinction between civil and criminal contempts and the personal elements which prompt action by a court in the matter of civil contempts as clearly pointed out in the case of *People ex rel. Gaynor* v. *McKane* (78 Hun, 154, at p. 160) where a review of the subject may be found. The court there said: " This rule, which is applicable only to cases of criminal contempt, to which class the present proceeding belongs, is to be distinguished from the rule applied in cases of civil contempt. In the latter class it is essential to sustain a conviction that there shall exist, not only jurisdiction in the court or officer granting the order which has been disobeyed, but also a valid cause of action in the aggrieved party; and this results from the fact that a civil contempt is not an offense against the dignity of the court, but against the party in whose behalf the mandate of the court has been issued, and a fine is imposed solely as indemnity to the injured party. And as there can be no injury when there is no right to maintain the suit, it is essential that this right should exist in order to sustain a conviction, and that question is always open for examination on appeal. * * *

" While I have been unable to find that this distinction has been referred to in any of the contempt cases, it underlies every decision, and the different questions that have been considered in the opinions in the reported cases result from the difference in the character of the two offenses, and the different results that follow conviction according as the contemptuous act has been prosecuted as a civil or criminal offense.

" * * * Civil contempts cause an injury to a party to a civil action. The act need not necessarily be willful, and they are punished by a fine awarded to the individual litigant as an indemnity for his loss, and payment of which is enforced by the compulsory process of the court exerted in his behalf. Conviction of such a contempt involves a judicial determination that the party's rights or remedies have been defeated or impaired by the contemptuous act. Hence, it follows that as a party cannot be said to be injured who has not shown himself to be entitled to the equitable right or remedy which has been awarded to him, the court, in determining whether a person is guilty of a civil contempt, will look into the facts of the case and see if they present an occasion for equitable relief."

The fine for contempt was evidently imposed by the surrogate because of special circumstances known to him and solely for the protection of Lieberman. Being personal to him, it was not the subject of sale or assignment to some other person. It may have been that the surrogate would not have granted such relief to the assignee or to any one except Lieberman, because of special circumstances and the character of the services rendered by him. That relief being discretionary, in all probability would not have been granted to a stranger to the proceeding. Lieberman was the only party aggrieved and the decree was to compel the performance of an act to which he was personally entitled because of special circumstances.

In *Matter of Ball* (*supra*) that distinction is clearly stated. " It is enacted that the court may punish as for a contempt certain forms of misconduct by which the right or remedy of a party may be ' defeated, impaired, impeded or prejudiced ' (Judiciary Law, § 753), and that the process may issue if it be determined that the offense charged has so affected the rights or remedies of ' a party ' (Judiciary Law, § 754).

" While the person whose rights and remedies are the subject of this statute is therein indicated only as ' a party,' it would involve a legislative absurdity if the language thus employed were construed to mean any party except the one who prayed for relief against the contempt alleged. There are many cases in which the courts, with an assurance which excludes all need for discussion, have read the statute as if in place of the words ' a party ' the words ' the moving

party,' ' the injured party,' or ' the complaining party ' were used. *Guerrier* v. *Coleman*, 135 App. Div. 47; *Obermeyer & Liebman* v. *Adisky*, 123 id. 272; *Socialistic Co-op. Pub. Assn.* v. *Kuhn*, 51 id. 583; *Dailey* v. *Fenton*, 47 id. 419.

" Again, the Judiciary Law betrays a consciousness throughout its several provisions that the remedy is open only to ' an aggrieved party.' The fine to be imposed is one which shall be sufficient to indemnify an ' aggrieved party.' It is to be paid over to an ' aggrieved party,' and, again, its acceptance by an ' aggrieved party ' shall be a bar to an action by him to recover damages for the loss or injury. Judiciary Law, § 773." (See Rapalje Contempts, pp. 185, 186; *Hawley* v. *Bennett*, 4 Paige Ch. 163.)

Where a party interested in the enforcement of a decree has by his own act made compliance with such decree legally impossible, the other party to the proceeding may not be punished for contempt. To meet that objection the respondent now urges that he is acting as attorney for his assignee. If that be so, there was a failure to comply with section 291 of the Surrogate's Court Act which provides for a substitution.

The assignee was not a party to the proceeding upon which the contempt was based. The respondent is not in contempt for not paying money to the assignee or any person other than the one to whom it is made payable by the terms of the decree. Although the amount due by the decree was assignable, the right to enforce the decree by punishment for contempt being personal to the party in whose favor it was given, is incapable of transfer or assignment. The party having assigned all rights under the decree, he was no longer entitled to have it enforced even to the extent of collecting the sum due therein, and was no longer entitled to have the party who failed to comply with the order held in contempt.

It follows, as the surrogate held, that where the party interested in the enforcement of the decree has by his own act defeated his rights, the contemnor may not be committed for a contempt.

The surrogate properly discharged the respondent from custody and the orders should be affirmed, with twenty dollars costs and disbursements to the respondent.

MERRELL and MCAVOY, JJ., concur; FINCH, P. J., and SHERMAN, J., dissent and vote to reverse and remand the respondent.

SHERMAN, J. (dissenting). As stated in *Eastern C. S. Co.* v. *B. & M. P. I. U., Local No. 45* (200 App. Div. 714, 717): " The proper practice for reviewing an order in either a civil or a criminal contempt proceeding in a civil action is, therefore, by appeal from the order." Here there was no appeal from the decree of the surrogate directing Springer, an executor, to pay to Lieberman the

sum of $1,000 and costs, nor from the order of April 4, 1929, which adjudged him in contempt of court and fined him the sum of $1,096.50, theretofore directed by decree of May 18, 1928, to be paid to Lieberman; nor was there any attack upon the sufficiency of the warrant dated June 3, 1929, under which he was arrested and incarcerated. There is, therefore, no question involved on this appeal as to the sufficiency of the adjudication of the contemnor's misconduct in failing to comply with the provisions of the above decree. (Surr. Ct. Act, § 84, subd. 4; Judiciary Law, § 753.) The warrant of commitment was prior to the assignment hereinafter mentioned.

Between April and September, 1929, Springer, who is a lawyer, made several payments on account to Lieberman in the total sum of $500. Because the decree was thereafter assigned by Lieberman to Decher by an instrument executed and delivered on December 17, 1929, which assignment was filed and recorded in the Surrogate's Court on August 15, 1931, it is contended that the surrogate's order now appealed from (made in February, 1933, upon Springer's motion) discharging Springer from the custody of the sheriff by whom he had been committed to jail on December 13, 1932, should be upheld on the ground that the adjudication in contempt was made for the sole benefit of Lieberman who had originally applied for that order, and that since Lieberman had assigned the decree before Springer's incarceration, Springer is to be relieved from the penalty of his contempt and allowed to retain the moneys which for nearly three years he has kept in contemptuous disregard of the court's order and in defiance of the warrant for his arrest.

I do not agree with the view that the contempt order and warrant of commitment became virtual nullities upon the assignment by Lieberman of all his right, title and interest in the decree of May 18, 1928. A decree of the surrogate directing the payment of a sum of money may be assigned as if it were a judgment. (Surr. Ct. Act, § 81.) It follows that " the assignee succeeds to all incidental or collateral rights, remedies and advantages existing at the time of the assignment and then available to the judgment creditor," including " the right of proceeding with an attachment already issued, and the right where the judgment is for money wrongfully appropriated to have the judgment debtor arrested." (34 C. J. 651, § 999.) The assignment of the final decree carried with it the outstanding contempt order just as the assignment of a tort judgment would carry with it an outstanding execution against the judgment debtor. The contempt order was for the benefit of the owner of the decree and was merely a method of its enforcement. Could not Decher successfully institute, anew, contempt proceedings as the owner of this decree?

In *King* v. *Kirby* (28 Barb. 49) it was held that the assignee of a judgment recovered against a debtor for fraud and false and fraudulent representations could institute proceedings under the act of 1831* for the arrest and imprisonment of the judgment debtor, the court stating, with respect to the assignment, that the debt " is precisely in its original position, except that through the act of the original creditor it now belongs to a third person. I do not think this should affect the remedy. * * * The remedy attaches to, and follows, the debt. It is one of the means of its enforcement. * * * Imprisonment is a mode of collecting the debt, and the policy of the law is to favor the collection of debts. It is no respecter of persons, and regards the assignee of a demand, provided he be in fact the owner, with the same favor as the original contractor."

In *Rufe* v. *Commercial Bank* (99 Fed. 650, 653) it was held that by whatever terms the assignment was made, if the debt passed, all rights and remedies for its collection also passed with it.

The assignment of a judgment carries with it the claim and debt upon which it was founded, and all the rights and remedies for the recovery and collection of such claim or debt. (*Bolen* v. *Crosby*, 49 N. Y. 183, 187.) The assignee stands entitled to all the rights of his assignor. (*Harmon* v. *Hope*, 87 N. Y. 10, 14.)

In *Matter of Ball* (94 Misc. 112, 113), Surrogate Ketcham said: " Though a court may of its own motion take cognizance of a civil contempt, it seems plain from the origin and history of the jurisdiction over such matters that the process by which private rights and grievances are to be vindicated by proceedings in contempt is available only to a party in whose person and estate the injury is sustained, *or to one who has succeeded him in interest.*"

The Circuit Court of Appeals, Second Circuit, stated (*Matter of Paleais*, 296 Fed. 403, at p. 407): " The general rule is that a proceeding for contempt to enforce a civil remedy can be instituted by an aggrieved party, *or by one who succeeds to his rights, or by one who has a pecuniary interest in the right to be protected.*"

This principle that an assignee obtains rights under contempt proceedings was applied by this court in *People ex rel. Lawyers' Surety Co.* v. *Anthony* (7 App. Div. 132, 135; affd., 151 N. Y. 620).

The distinction between civil and criminal contempts has frequently been pointed out. (*Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 441; *Bessette* v. *Conkey Co.*, 194 id. 324, 328, 329; *People ex rel. Munsell* v. *Court of Oyer & Terminer*, 101 N. Y. 245, 249.) It was stated in the *Gompers Case* (*supra*) that " imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which,

---

* See Laws of 1831, chap. 300.— [Rep.

either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. * * * If imprisoned, as' aptly said in *Matter of Nevitt*, 117 Fed. Rep. 461, ' he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do."

It is difficult to see wherein the contemnor has been prejudiced by the present procedure under the contempt order and warrant previously issued by the surrogate. The power to punish for contempt is inherent in the court. It is essential to the administration of public justice and the enforcement of private rights. Here respondent has failed to show that he is entitled to a discharge from custody. (Judiciary Law, § 775.) A balance of $596.50 of the fine imposed by the contempt order remains unpaid. Our attention has not been called to any case which specifically holds that an assignee, as here, may not maintain this proceeding. Nor should the fact of the assignment avail the respondent to flout the decree adjudging him in contempt, which decree he is continuing to disobey and defy. That decree has never been vacated; it stands simply disobeyed.

The order appealed from does no more than merely discharge Springer. Neither the decree of May 18, 1928, nor the order of April 4, 1929, adjudging Springer in contempt nor the warrant of commitment issued thereon has been vacated. They are in full force and effect but Springer is apparently free to disregard them.

It is claimed that appellant Decher has not been formally substituted in the proceeding. Here she is opposing Springer's application for his discharge. The assignment to her is a recorded instrument in the Surrogate's Court and it was fitting that she should be a party to this proceeding. No formal order of substitution as a party was required to be entered and she was entitled to be heard (as she was, by the learned surrogate) in opposition to Springer's motion and to ask affirmatively that the contempt order be upheld and Springer be required to obey it.

The orders appealed from should be reversed, and contemnor remanded.

FINCH, P. J., concurs.

Orders affirmed, with twenty dollars costs and disbursements to the respondent.