## In re DODGE.

District Court, N. D. New York.
Jan. 9, 1935.

David J. Goldstein, of Utica, N. Y., for bankrupt.

Hobart L. Morris, of Utica, N. Y., for assignee of judgment.

COOPER, District Judge.

A certain young woman sued the bankrupt and one John Cieri for damages for malicious assault, and obtained a judgment in a competent state court for $2,000 and costs.

The two defendants were also indicted, tried, and convicted in the state court for the offense which was the subject of the civil action. They were sentenced to imprisonment and served their sentence. Full faith and credit must be given by this court to the sentence of the state court as adequate punishment of the offenders and as sufficient warning to other possible like offenders.

Carlo Cieri, the father of the bankrupt's codefendant, took an assignment of the judgment and caused garnishee to issue against the bankrupt's wages. Thereupon the bankrupt filed a voluntary petition in bankruptcy and was duly adjudicated. He applied for and was granted a stay restraining the execution of the garnishee order until the determination of the bankrupt's application for discharge. Objection was filed to his discharge by the assignee of the judgment.

The referee, to whom the matter was referred as special master, decided that the bankrupt is not entitled to discharge from this judgment, but is entitled to a discharge from all other debts.

The matter comes before the court on motion to set aside the report of the special master and to grant discharge from this judgment as well as all other debts.

It may be said at the outset that this question is substantially an academic one for this court, for the dischargeability or enforcement of a particular judgment will ordinarily be determined by the state court in which the judgment was obtained and that court is not bound by any decision this court might make as to such judgment in granting a general discharge.

However, since the special master takes the view that this judgment is not dischargeable and the discharge might so provide, and since the continuance of the injunction is involved, it is appropriate for this court to pass on the question.

The bankrupt admits that the cause of action is not dischargeable in bankruptcy, and that the judgment recovered there is also not dischargeable so long as held by the injured person, but he insists that the judgment when assigned to a third party loses its characteristic as a nonassignable tort claim, becomes a mere ordinary money judgment, and is therefore dischargeable in bankruptcy.

The special master, in deciding against the bankrupt's contention, based his decision upon the case of King v. Kirby, 28 Barb. (N. Y.) 49. This was not a bankruptcy case, and the question of the dischargeability of the bankrupt was not before the court. The judgment was for fraud and false representation, and the question was whether the assignee of the judgment could have body execution against the judgment debtor as the assignor could have done before the judgment.

The court held that the assignee had all the right to imprison the debtor that the assignor had.

Causes of action for injuries to property of which fraud is one then were, and now are, assignable. Keeler v. Dunham, 114 App. Div. 94, 99 N. Y. S. 669; Wickham v. Roberts, 112 App. Div. 742, 98 N. Y. S. 1092.

But judgment at bar is not a judgment arising from an injury to property. It is a judgment recovered in an entirely different class of torts, viz., injury to the person, which is governed by a different rule of law as to assignability. Hence King v. Kirby, supra, does not apply or control the decision here.

The right to recover damages for personal injuries such as assault has always been personal and nonassignable both at common law and under statute down to this time. Pulver v. Harris, 52 N. Y. 73; Keeler

v. Dunham, supra; Coughlin v. New York Central & H. R. R. Co., 71 N. Y. 443, 450, 27 Am. Rep. 75; Zabriskie v. Smith, 13 N. Y. 322, 333, 64 Am. Dec. 551; N. Y. Personal Property Law (Consol. Laws, c. 41) § 41.

In the earlier common law, generally speaking, causes of action were not assignable. 5 Corpus Juris, 546, Greenby v. Wilcocks, 2 Johns, 1, 3 Am. Dec. 379. Later certain choses in action were declared assignable, but the suit had to be brought in the name of the original owner. Seeley v. Seeley, 2 Hill, 496.

Later, by statute in this state, assignment was permitted except as to certain rights of action. N. Y. Code Procedure (1848, as amended) §§ 111–122; Meech v. Stoner, 19 N. Y. 26, 29 (1859).

■ The general test of assignability of a chose in action is whether it would survive and pass to the personal representative of a decedent. Rights of action which were personal in their nature and did not survive the owner and did not pass to his legal representatives as part of his estate were not assignable under such statute. 5 Corpus Juris, 850; Mackey v. Mackey, 43 Barb. 58, 60; Brackett v. Griswold, 103 N. Y. 425, 9 N. E. 438.

Among such personal, nonassignable rights of action were those arising from willful assault upon the person.

■ Judgments also were not assignable at common law so as to vest the legal title thereto in the assignee, though certain equitable rights could be transferred. 34 Corpus Juris, 636; Baker v. Wood, 157 U. S. 212, 216, 15 S. Ct. 577, 39 L. Ed. 677.

The present statute law governing the assignments both of causes of action and of judgments is embodied in section 41 of the Personal Property Law. That section reads as follows:

"§ 41. *Transfer of Claims.* 1. Any claim or demand can be transferred, except in one of the following cases:

"(1) Where it is to recover damages for a personal injury, or for a breach of promise to marry.

"(2) Where it is founded upon a grant, which is made void by a statute of the state; or upon a claim to or interest in real property, a grant of which, by the transferrer, would be void by such a statute.

"(3) Where a transfer thereof is expressly forbidden by a statute of the state,

or of the United States, or would contravene public policy.

"2. A judgment for a sum of money, or directing the payment of a sum of money, recovered upon any cause of action, may be transferred; but if it is vacated or reversed, the transfer thereof does not transfer the cause of action unless the latter was transferable before the judgment was recovered.

"3. Where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counter-claim, in his own name, as the transferrer might have done; subject to any defense or counter-claim, existing against the transferrer, before notice of the transfer, or against the transferee. But this section does not apply, where the rights or liabilities of a party to a claim or demand, which is transferred, are regulated by special provision of law; nor does it vary the rights or liabilities of a party to a negotiable instrument, which is transferred."

Pulver v. Harris, supra, was decided when the statute permitting assignments was substantially like section 41 of the Personal Property Law. There a judgment was recovered in an action for assault, assigned in part to the attorney for his services, and reversed on appeal.

The parties then settled without the knowledge or consent of plaintiff's attorney, who sought to prosecute the action in a new trial under his assignment for the purpose of recovering the value of his services.

The court held, concerning the assignment of the judgment, as follows: "The partial assignment of the judgment by the plaintiff to his attorney to secure his costs and counsel fee before the reversal, so far as the judgment was concerned, became a nullity. There was no longer any judgment in existence. The assignment of a judgment would also include the cause of action upon which it was rendered in case of a subsequent reversal if the latter was assignable. In the present case the cause of action was an assault and battery upon the plaintiff by the defendant. This could not be assigned, either at common law or by the provisions of the Revised Statutes or Code. (People v. Tioga Com. Pleas, 19 Wend. 73; McKee v. Judd, 2 Kern. [12 N. Y.] 622 [64 Am. Dec. 515]; Zabriskie v. Smith, 3 Kern. [13 N. Y.] 322 [64 Am. Dec. 551]; Haight v. Hayt, 19 N. Y. 464; 2 Rev. St. pp. 447, 448, §§ 1 and 2). It follows that, after the reversal

of the judgment and the order of a new trial, the assignment by the plaintiff to his attorney became entirely inoperative, so far as the defendant's rights were concerned. As to him it was a cause of action belonging to the plaintiff, which he could not transfer, and which must remain subject to his control until merged in a judgment, or, at least, a verdict. When so merged it becomes property, and part of the estate of the party during the continuance of the merger, and, being such, may be transferred in like manner as choses in action, which survive the owner and vest in his personal representatives."

Tort actions arising from injuries to the person are not and never were under common law or statute causes of action which survive the owner and vest in his personal representatives. On the contrary, the uniform rule is and has been that such personal torts die with the owner. Hence it necessarily follows that, if personal torts reduced to judgment can be transferred in the same manner as choses in action which become property and pass to the representative of the deceased owner, they are, upon such transfer, something other than personal torts which do not survive the owner and pass to his representative; that is to say, they are no longer nonassignable personal torts, but, merged in judgment, are transferable property like other transferable choses in action.

True enough, the merger of the cause of action for assault in judgment does not change the judgment from a liability for malicious injury to person (assault) so long as the judgment is held by the owner of the cause of action. The character of the cause of action determines the character of the judgment. But, while it is a tort judgment, it is a judgment for a sum of money also.

The judgment in fact only determines that the plaintiff has such a cause of action and the amount of his damages. There must be such judicial determination before the plaintiff is permitted to have any use of judicial process to obtain payment of his damages. Without a judicial determination, no one knows that plaintiff has been assaulted or has suffered any damage.

To hold that the recovery of the judgment in a cause of action for assault changed the character of the liability from one in tort with its attributes to a mere money judgment (while the judgment remains the property of the plaintiff) would in fact deny all relief for tort of this character. There

could be no enforcement of a tort liability because, when the judgment was recovered, the tort would be gone, and the judgment even in the hands of the injured plaintiff would be a mere money judgment enforceable by property execution only. No such contention is made here so long as the judgment remains in the hands of the plaintiff.

But the assignee of such judgment enjoys no such personal rights and remedies as does the plaintiff, unless there is positive statute modifying the common law and so permitting. There is none. The only existing statute law is section 41, supra. Under an antecedent statute to the same effect as section 41, supra, it was said in the Pulver Case, supra: "As to him [the attorney] it was a cause of action belonging to the plaintiff, which he [plaintiff] could not transfer, and which must remain subject to his control until merged in a judgment, or, at least, a verdict. When so merged it [the cause of action] becomes property, and part of the estate of the party during the continuance of the merger, and, being such, may be transferred in like manner as choses in action, which survive the owner and vest in his personal representatives."

This clearly means that, being personal and not transferable before judgment, such cause of action before judgment did not have the character of property, an essential element of which is transferability, at least so far as intangible property is concerned. But, when merged in a judgment, its character changed, and it became property or took on the character of property, and became transferable in like manner as other like property (choses in action).

In Mackey v. Mackey, 43 Barb. 58 (1864), the action was for false imprisonment. After verdict but before judgment, plaintiff assigned the verdict and judgment to be later entered thereon to his attorney. The court held the assignment valid, and among other things said: "The demand is, under this statute, invested with the attributes of property, after verdict, capable of a legal existence in and of itself."

Here is a definite statement that the property attribute does not arise until after a verdict subsequently to be embodied in judgment. It necessarily means that a personal, nonassignable, and noninheritable tort cause of action has no property attribute before judgment, or, at least, before verdict.

Upon merger, and while still in the hands of the plaintiff, the judgment is made up of

two component parts, viz., the nonassignable tort cause of action and the property element arising from judicial determination of money due. Upon transfer of the judgment, either by death or assignment, the nonassignable tort cause of action cannot pass because of the bar of the law; first common law and now statute, to the assignment of such causes of action, but the judicial element of money due, i. e., the judgment proper, can and does pass under statute modifying the former common-law bar to the assignment of judgment. The money judgment element is all the assignee gets or can get. It is the law which works the change of character in the judgment upon assignment and not the will of the parties.

Upon reversal or vacation either before or after assignment of a judgment recovered in such tort or action, the property element of the merger, i. e., the judicial determination of money due, is destroyed, and the tort cause of action is revived for the plaintiff by force of the statute. Personal Property Law, § 41, subd. 2. So far as an assigned judgment is concerned, this is specifically held in the quotation from the opinion in the Pulver Case, supra, which was decided under a former statute re-enacted in said section 41.

That the state can, in the absence of constitutional prohibition, continue the common-law bar to the assignment of such personal tort causes of action, and remove the common-law bar against the assignment of judgments recovered therein, and can as a condition of assignment stamp upon the assigned judgment such character as it sees fit, including the character of an ordinary money judgment free of tort characteristics, and as if the judgment had been recovered in an action for debt, cannot be questioned.

There is no constitutional bar. The subject is exclusively one within the domain of the law of the state. Warner v. Jaffray, 96 N. Y. 248, 254, 48 Am. Rep. 616.

Any construction of the statute which would permit the assignment after judgment of a personal nonassignable tort cause of action which could not be assigned before the judgment seems an evasion, if not a positive flouting, of the statute declaring the long-established policy of the state that such causes of action could not be assigned.

No New York state decision to the contrary of the views herein expressed has been found by the industry of counsel or the court.

The views herein expressed seem to find a measure of support in Borst v. Baldwin, 30 Barb. 180, and in Birdsall v. Fuller, 11 Hun, 204.

This principle that the right to punish by execution process against the body is personal and not assignable has been held with reference to imprisonment for contempt in Matter of Lieberman, 238 App. Div. 305, 264 N. Y. S. 303, 308 (appeal dismissed In re Springer's Estate, 262 N. Y. 678, 188 N. E. 117), where the court said: "Although the amount due by the decree was assignable, the right to enforce the decree by punishment for contempt, being personal to the party in whose favor it was given, is incapable of transfer or assignment."

Even though the tort itself is not assignable and assignment of the judgment merely transfers a money judgment, the question remains whether such a judgment is dischargeable in bankruptcy. Section 17 of the Bankruptcy Law (11 USCA § 35) defines what claims are not dischargeable. The applicable provision is section 35 (2), which reads as follows: "Liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another."

The clear intent of this provision is to save from discharge in bankruptcy the claim of a person who was willfully or maliciously injured by the bankrupt. Injuries for assault clearly come within this subdivision (2).

As has been shown, the nature and character of such judgments when assigned are to be determined by state law.

Does the above provision of the Bankruptcy Law take an assigned judgment recovered in an action for assault as does the state law, viz., as property only, a mere money judgment, or does it disregard the state law entirely and take such assigned judgment as a cause of action or liability for willful or malicious injuries to the person of another assignable despite the state law? If it does the latter, it overrides the state law, changes property rights fixed by state laws, and makes assignable that which the common law and state statute make unassignable.

It may well be doubted that the federal constitutional power to establish uniform laws on the subject of bankruptcy throughout the United States (article 1, § 8, cl. 4) is sufficiently broad in scope to change the nature and character of property and property rights as declared by state law, for the as-

signed judgment is property of a certain character assignable like a chose in action and capable of passing as part of the estate of the owner thereof without any tort characteristic, and it is no longer a liability for willful injury to the person of another, which cannot be transferred.

But, passing the constitutional power of Congress in this respect, has Congress attempted or intended to do such thing by section 35 (2) above?

■ If there were a conflict between state law and bankruptcy law, the state laws would be suspended, but only to the extent of the conflict. Stellwagen v. Clum, 245 U. S. 613, 38 S. Ct. 215, 62 L. Ed. 507. But there is not on the face of the federal statute any such conflict.

While some of the remedies of the creditor may be changed by the bankruptcy, such as making void preferential transfers during the four months prior to bankruptcy, property rights, generally speaking, and the nature and character of property are not affected by the bankruptcy of the debtor.

The bankruptcy law recognizes property rights established by state laws, however much they may vary in the different states. State property exemptions, dower, validity of mortgages, and priority of payments and the like are so recognized. Stellwagen v. Clum, 245 U. S. 605, 613, 38 S. Ct. 215, 62 L. Ed. 507.

The bankruptcy law also gives to a trustee in bankruptcy the right to set aside transfers of property made more than four months prior to bankruptcy, if the creditors would have had that right under the state laws, had bankruptcy not ensued. Bankr. Act § 70 (e), 11 USCA § 110 (e) so provides. Bankr. Act § 67 (d), 11 USCA § 107 (d) also recognizes the effect of state law, and so, to some extent, does section 60 (a) of the act, 11 USCA § 96 (a).

■ Congress, of course, has the power to say from what debts the bankrupt shall be discharged and from what liabilities he shall not be discharged. But, in so doing, Congress should not be held to have intended to change the nature and character of the debts and liabilities as fixed by state law unless such intent is definitely expressed or is a necessary inference from a federal statute.

No reason appears from section 35 (subdivision 2), 11 USCA, or any other section of the bankruptcy laws, why a judgment obtained in a state court in a nonassignable action for malicious personal injuries, which is permitted to be assignable by state law on condition that it be merely a money judgment, should not, when assigned, be held to continue to have the status of a money judgment and nothing else under 11 USCA § 35 (2).

What was a liability for personal injury before bankruptcy must remain such after bankruptcy. What was a mere judgment for a sum of money under the laws of the state before the bankruptcy does not become something else after bankruptcy.

The only reported case which can be found on the subject is In re Pacer (D. C.) 5 F. Supp. 439. Here an assigned judgment recovered in an action for assault and battery was held not dischargeable. No authority cited to support the views therein stated. Doubtless there was no authority directly in point.

There are facts existing in the Pacer Case which do not exist here, and that case is not controlling here.

■ Having in mind that the objects of the bankruptcy law are mainly (1) to convert the assets of the bankrupt into cash for distribution among the creditors and (2) to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh (Williams v. U. S. Fid. & Guar. Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713; Stellwagen v. Clum, 245 U. S. 605, 617, 38 S. Ct. 215, 62 L. Ed. 507, supra), and having in mind that under the laws of the state of New York, if herein correctly construed, the assignee of this judgment holds, and can hold under the policy and law of the state, no claim or liability for willful and malicious injury to his person, but merely an ordinary judgment for a sum of money, the discharge of the bankrupt from this judgment should not be denied, unless the federal statute, Bankr. Act § 17 (2), 11 USCA § 35 (2), must be so construed as to deny such discharge.

No good reason appears why such construction should be given nor has controlling authority so holding been found.

The decision of the special master is set aside so far as it holds that the assigned judgment is not dischargeable and confirmed in holding that the bankrupt is entitled to discharge. The discharge must be unqualified.

The injunction restraining garnishee may continue for one year, at which time the bankrupt may apply to the state court to cancel the judgment.