**HYGIENIC PRODUCTS CO. v. COE, Com'r of Patents.**

No. 6467.

United States Court of Appeals for the District of Columbia.

Decided June 1, 1936.

Randolph C. Richardson, of Washington, D. C., and Harry Frease, of Canton, Ohio, for appellant.

T. A. Hostetler and R. F. Whitehead, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant company, plaintiff below, appeals from a decree of the Supreme Court of the District of Columbia dismissing its bill in a suit brought under section 4915, R.S., as amended (35 U.S.C.A. § 63), to require the Commissioner of Patents to register a trade-mark for cleaning powder for water closet bowls and automobile radiators.

At the threshold we are confronted with a question of jurisdiction; namely, whether a defeated applicant for registration of a trade-mark must first appeal from the decision of the Commissioner of Patents to the United States Court of Customs and Patent Appeals, and whether if he is there unsuccessful he may then proceed in equity under section 4915, R.S., as amended (35 U.S.C.A. § 63). Our recent decision in Parker-Kalon Corporation v. Coe, 66 App.D.C. 252, 86 F.(2d) 31, decided November 4, 1935, sustains this view. That decision, on the other hand, is challenged as being in conflict with former decisions of this court and of the Supreme Court of the United States. Appellant avers in its bill of complaint that "no appeal from the refusal of the Commissioner of Patents has been taken to the United States Court of Customs and Patent Appeals." This was alleged as ground of jurisdiction in the court below.

In determining this question, it is proper briefly to review the state of the law prior to the Act of Congress of March 2, 1927 (44 Stat. 1335). Section 9 of the Trade-Mark Act of 1905 (33 Stat. 727, 15 U.S.C.A. § 89), provided as follows: "If

an applicant for registration of a trade-mark, or a party to an interference as to a trade-mark, or a party who has filed opposition to the registration of a trade-mark, or a party to an application for the cancellation of the registration of a trade-mark, is dissatisfied with the decision of the Commissioner of Patents, he may appeal to the Court of Appeals of the District of Columbia, on complying with the conditions required in case of an appeal from the decision of the commissioner by an applicant for patent, or a party to an interference as to an invention, and the same rules of practice and procedure shall govern in every stage of such proceedings, as far as the same may be applicable."

Section 4915, R.S. (35 U.S.C.A. § 63), prior to the Act of March 2, 1927, provided that, where an application for a patent was refused by the Commissioner of Patents, appeal may to the Court of Appeals of the District of Columbia, and that if the applicant were there defeated, he might then proceed by bill in equity in "the court having cognizance thereof."

In this situation the right of an applicant for registration of a trade-mark, whose claim had been denied by the Court of Appeals of the District of Columbia on appeal from the Commissioner of Patents, to proceed in equity under section 4915 was very fully reviewed by Chief Justice Taft in American Steel Foundries v. Robertson, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953, and was affirmed in the later case of Baldwin Co. v. Robertson, 265 U.S. 168, 44 S. Ct. 508, 68 L.Ed. 962. In the latter case the Court of Appeals of the District of Columbia (Robertson v. U. S., 52 App.D. C. 368, 287 F. 942) directed the dismissal of a bill in equity in the Supreme Court of the District on the ground that the court was without jurisdiction to review in equity the decision of the Commissioner of Patents in a trade-mark proceeding. In other words, we held that the right to proceed in equity, under section 4915, applied only to patent cases. The Supreme Court reversed the decision of this court and held that the right to proceed in equity under section 4915, R.S., applied to both patent and trade-mark proceedings. In the course of its opinion the Supreme Court said (265 U.S. 168, at page 179, 44 S.Ct. 508, 509, 68 L.Ed. 962): "We have held that the assimilation of the practice in respect of the registration of trade-marks to that in securing patents as enjoined by section 9 of the Trade-Mark Act makes section 4915, R.S., providing for a bill in equity to compel the Commissioner of Patents to issue a patent, applicable to a petition for the registration of a trade-mark when rejected by the Commissioner. American Steel Foundries v. Robertson, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953; Baldwin Co. v. Howard Co., 256 U.S. 35, 39, 41 S.Ct. 405, 65 L.Ed. 816; Atkins & Co. v. Moore, 212 U.S. 285, 291, 29 S.Ct. 390, 53 L.Ed. 515."

After pointing out the four grounds enumerated in section 9 of the Trade-Mark Act (15 U.S.C.A. § 89) on which appeal lies to the District Court of Appeals, the court said: "The next inquiry is whether in addition to such appeal and after it proves futile, the applicant is given a remedy by bill in equity as provided for a defeated applicant for a patent in section 4915, R.S. We have in the cases cited given the closing words of section 9 a liberal construction in the view that Congress intended by them to give every remedy in respect to trade-marks that is afforded in proceedings as to patents, and have held that under them a bill of equity is afforded to a defeated applicant for trade-mark registration just as to a defeated applicant for a patent. It is not an undue expansion of that construction to hold that the final words were intended to furnish a remedy in equity against the Commissioner in every case in which by section 9 an appeal first lies to the Court of Appeals."

This decision clearly determined, in the light of the law as it then existed, that there was no distinction between a patent and a trade-mark case under the parallel procedure provided by section 4915, R.S. and section 9 of the Trade-Mark Act.

This brings us to a consideration of the Act of March 2, 1927, § 8, 44 Stat. 1336, whereby section 4911, R.S., was amended (see 35 U.S.C.A. § 59a) to read, in part, as follows: "If any applicant is dissatisfied with the decision of the board of appeals, he may appeal to the Court of Appeals of the District of Columbia, in which case he waives his right to proceed under section 4915 of the Revised Statutes." This ended the right of double appeal in patent cases, first to the Court of Appeals of the District of Columbia and, if there defeated, through a suit in equity under section 4915. The same act (44 Stat. 1336, § 11, see 35 U.S.C.A. § 63) amended section 4915, prescribing the procedure to be followed in the event an applicant for

a patent, which has been refused by the Commissioner, elects to proceed in equity instead of by appeal to the Court of Appeals of the District of Columbia.

It will be observed that under this act provision was made for an alternative proceeding, either by appeal from the Board of Appeals in the Patent Office to the Court of Appeals of the District of Columbia, or by a direct proceeding by bill in equity; but the applicant is in no case entitled to the benefit of both remedies. If he prosecutes his appeal to the Court of Appeals, he waives his remedy in equity. If he does not prosecute his appeal, he may proceed in equity. While section 4915 is amended in some other particulars, relating merely to procedure, there is nothing which could possibly operate to change the interpretation placed upon it with reference to trade-marks by the Supreme Court in the Baldwin Case. Section 9 of the Trade-Mark Act was not in any manner changed or affected by the Act of March 2, 1927.

Considering now the Act of March 2, 1929 (45 Stat. 1475), we find that section 4915 and section 9 of the Trade-Mark Act were amended thereby in only one particular, as follows:

"The jurisdiction now vested in the Court of Appeals of the District of Columbia in respect of appeals from the Patent Office in patent and trade-mark cases is vested in the United States Court of Customs and Patent Appeals.

"* * * and [Section] 4915 (section 63, title 35, United States Code [35 U.S.C. A. § 63]) of the Revised Statutes, as amended, and section 9 of the Act entitled 'An Act to authorize the registration of trade-marks used in commerce with foreign nations or among the several States or with Indian tribes, and to protect the same,' approved February 20, 1905 (United States Code, title 15, section 89 [15 U.S. C.A. § 89]), are amended by striking out the words 'Court of Appeals of the District of Columbia' wherever they occur therein and inserting in lieu thereof the words 'United States Court of Customs and Patent Appeals' in each instance." Section 2.

This is the only change in section 4915 and in section 9 of the Trade-Mark Act since the decision in the Baldwin Case. No legislation has been enacted since then changing the rule of parallel procedure laid down by Chief Justice Taft.

This interpretation of section 9 of the Trade-Mark Act, and of the right thereunder to proceed in equity as above suggested, is in full accord with the opinion of this court in Alexandrine v. Coe, 63 App.D.C. 227, 71 F.(2d) 348, 350, wherein Mr. Justice Robb, following the rule of parallel procedure laid down in the Baldwin Case, said: "Under the provisions of section 9 of the Trade Mark Act, as amended, and section 4915, R.S., as amended, appellant in the cancellation proceeding, had it so elected, might have prosecuted an appeal to the United States Court of Customs and Patent Appeals. * * * The filing of a bill in equity is an alternative remedy and, under the authority of the Baldwin Case, properly may be brought against the Commissioner here."

One of the questions considered in the Parker-Kalon Case was whether or not a double remedy, first to the Court of Customs and Patent Appeals, and then, if there defeated, through equity to this court, was the proper procedure to be pursued in a trade-mark opposition case. We held that to be the proper procedure.

That the Parker-Kalon Case came within the ruling in the Baldwin Case we think is beyond question. In this situation, we are constrained to overrule our decision in the Parker-Kalon Case and to sustain the general rule, established under the decision in the Baldwin Case, that an appeal from proceedings under section 9 of the Trade-Mark Act lies either to the Court of Customs and Patent Appeals or through equity in the proper District Court of the United States, and that these are mutually exclusive remedies, both of which cannot be availed of by the party defeated in the Patent Office.

The trade-mark in the present case consists of a rectangular yellow panel, bounded by a contrasting dark blue border, applied to the can or other package containing the goods. The right to register was refused by the Examiner of Trade-Marks "on the ground that what is claimed as a trade-mark is not in fact a trade-mark, i. e., that it is not such a device as would ordinarily indicate to the public origin or ownership of the goods." The Assistant Commissioner of Patents affirmed the decision of the examiner on the further ground that the public would regard the panels simply as a label, functioning descriptively to impart information as to the contents of the container.

We do not agree with the holding of the officials of the Patent Office. It is settled law that color may constitute a

valid trade-mark, provided it is impressed in a particular design, such "as a circle, square, triangle, a cross, or a star." Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 171, 26 S. Ct. 425, 427, 50 L.Ed. 710.

The mere fact that appellant's mark is shown to be accompanied by two other trade-marks, together with certain descriptive matter impressed on the body of the mark and within the enclosing blue lines, does not in any way affect its function or destroy its validity as a trade-mark. Layton Pure Food Co. v. Church & Dwight Co. (C.C.A.) 182 F. 24, 29; Bass, Ratcliff & Gretton v. Christian Feigenspan (C.C.) 96 F. 206, 212.

In the Layton Case the mark involved was the picture of an annular band "in various colors upon its packages of baking soda and baking powder to indicate their origin and their manufacturers." This mark underwent several registrations in the Patent Office, and the Layton Case has become a leading one in that it shows the early recognition of the right to register mere color if, as held in the Leschen Case, "it be impressed in a particular design, as a circle, square, triangle, a cross, or a star." It is not objectionable that the mark in the present case includes (inclosed within the rectangle, but not part of the mark) words or pictures describing the character of the material upon which the mark is used. On this point the court in the Layton Case said: "Counsel insist that the complainant can maintain no right to the exclusive use of the annular band as a trade-mark because it and its predecessors always used it in association with words, such as 'John Dwight & Co.,' and with pictures, such as that of a cow, or an arm or hammer, upon their labels and never alone. But there is no rule of law and no reason that makes the use of a trade-mark alone upon the labels or packages that present the goods of a manufacturer or dealer indispensable to its existence. Such a rule would greatly diminish, if not destroy, the value of all trade-marks."

In the Feigenspan Case, where the registered mark was "a form of label bearing the triangular symbol in red to be applied to bottles containing Bass pale ale," the court said: "No one who has counterfeited a legitimate trade-mark and applied the spurious symbol in competition with the genuine can avoid the charge of infringement by showing that the false mark has in practice been so accompanied, on labels, capsules or otherwise, by trade-names, designations, descriptions or other accessories, not forming part of it, as to render it unlikely that the public has been deceived."

We think that the insertion of descriptive matter in the registered mark may properly emphasize the function of the mark as indicating origin and manufacture.

An exhibit was introduced in evidence in the court below which showed a large collection of trade-marks of color designs which have been registered in the Patent Office. One of these, Trade-Mark 200,-197, registered to the Ansted & Burk Company on June 30, 1925, consisted of an orange colored panel, rectangler in shape, inclosed on three sides by a dark stripe, to be used on packages and sacks containing flour. Trade-Mark 227,022, registered on April 26, 1927, to the Continental Paper & Bag Mills Corporation, consisted in coloring orange the inside surface of the hollow core upon which toilet paper and paper towels are wound. These are but two illustrations of a great number of similar marks which have been registered by the Patent Office over a long period of years. The practice of registering such marks has continued so long and become so firmly established that it should be given great weight in determining the right of the applicant in the present case to have its mark registered.

We think appellant's mark contains no elements which would forbid its registration. The mark is not in any respect descriptive of the contents of the container. The powder in the container is white, not yellow. Nor is the mark descriptive of any other characteristics of the contents. There is testimony in the record tending to show that this trade-mark indicates the origin and ownership of the goods to those who are familiar with the goods and their use. There is also testimony in the record tending to show that the public, in purchasing these goods from dealers, identifies the goods by the mark, registration of which is here sought. We are of the opinion, therefore, that the appellant is entitled to registration of its mark.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.

ROBB, Associate Justice, dissents on the question of jurisdiction.