## BARBASOL CO. v. JACOBS.
### No. 8969.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1947.

Edward S. Rogers and William T. Woodson, both of Chicago, Ill. and Karl Pohl, of New York City, for appellant.

Maurice S. Cayne, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment entered July 16, 1945, dismissing plaintiff's complaint in an action for statutory trademark infringement, Act of 1905, as amended, 15 U.S.C.A. § 81 et seq. The court made findings of fact and conclusions of law upon which its judgment was predicated.

Plaintiff is a shaving cream manufacturer with its factories and principal offices located at Indianapolis, Indiana. The defendant is an individual of Chicago, Illinois, who markets toilet preparations, including shaving creams, under the name of Eaton Laboratories. Plaintiff's trade-mark, registration No. 344122, is described in the certificate thus:

"The trade-mark consists of parallel diagonal blue, white and red stripes in the color sequence of blue-white-red-white-blue-white-red-white, etc., the said colored stripes forming a border for a rectangular panel or field in blue color. The drawing is lined to indicate the colors blue and red."

---

The color design thus described has been in continuous use by plaintiff since 1919, although not registered as a trade-mark until March 16, 1937. Defendant commenced in 1941 the use of the design alleged to infringe. Both the plaintiff and the defendant use their designs in connection with a brushless shaving cream. There is no question, therefore, but that their respective designs are used upon goods of the same descriptive properties.

Plaintiff's trade-mark and the manner of its use was found by the court as follows:

"Plaintiff's shaving cream product is identified by the word trade mark 'Barbasol' and by the distinctive package design trade mark hereinafter referred to. Said product is displayed and offered for sale in two types of cartons. One of said cartons is of rectangular shape, the length of which is about 3½ times its width and the depth is a little less than the width. In addition to the word 'Barbasol' being provided thereon, the carton has a striped border of blue, white and red diagonal stripes surrounding a rectangular panel or field in blue color. The shaving cream disposed in this type of carton is packed in an elongated soft metal tube, which is received and housed within said carton. The other type of carton is approximately square and it also has the word trade mark 'Barbasol' provided thereon, and the entire carton is provided with diagonal colored stripes of red, white and blue, said stripes forming a border for a blue field, on which appears the word 'Barbasol' and other printed matter. The shaving cream is disposed in a glass jar of octangular cross section and upon which the word 'Barbasol' appears. The jar is white and is disposed within the square carton."

The defendant's alleged infringing design and the manner of its use was found by the court as follows:

"The defendant's shaving cream is sold in only one type of container, that is a round glass jar, upon which is provided a label, the label having the word trade mark 'Eatons' provided thereon. The label is printed in a color combination of red, white and blue. The front of said label, upon which the word 'Eatons' appears, consists of a blue panel which is broken near its bottom by a horizontal white band upon which appear the words 'Shaving Cream' in red. The rear of the label, as the same appears on the jar, is also blue and has the word 'Eatons' appearing thereon at the top, in addition to other printed matter covering substantially the entire surface of said panel. Disposed between the front and rear blue panels are two narrow vertical panels with alternating diagonal red, white and blue spirally designed stripes, one panel on each side of the jar. The vertical edges of the front and rear blue panels are spaced from the narrow vertical panels by wide white lines."

Two questions are raised on this appeal, (1) is plaintiff's registered trade-mark a valid and subsisting trade-mark? and (2) if so, does the defendant's label design infringe plaintiff's carton design? We assume the first question was not urged below for the reason that no mention is made of it by the court. The second question was decided in the negative, apparently upon the court's finding that "Plaintiff has failed to show that anyone has been confused and thereby purchased or dealt in defendant's goods bearing defendant's label believing that the same were plaintiff's products or goods," and its conclusion of law that "As the resemblance of defendant's package design and label is not strikingly and confusingly similar to that of plaintiff's containers and labels, the plaintiff must prove confusion."

It is quite plain from the colloquy which took place between the court and counsel as shown by the record, as well as from the court's finding and especially its conclusion of law just quoted, that the court's decision was made upon the authority of Rytex Co. v. Ryan, 7 Cir., 126 F.2d 952.

It is important to keep in mind that the instant cause of action is solely for statutory trade-mark infringement, unfettered by any charge of unfair competition as is often-times the case, and that the mark in suit is for a design. It thus becomes immaterial as to the kind, size or shape of the container upon which such design is employed. It is equally important to keep in mind the fact that plaintiff's and defend-

ant's products admittedly are of the same descriptive quality.

■ On the question of the validity of the trade-mark, we start with the recognized rule that the registration of a trade-mark raises a strong presumption of its validity. Weiner, et al. v. National Tinsel Mfg. Co., 7 Cir., 123 F.2d 96, 98; Hemmeter Cigar Co. v. Congress Cigar Co., Inc., 6 Cir., 118 F.2d 64, 68; Feil v. American Serum Co., 8 Cir., 16 F.2d 88, 89.

Trade-marks comprising colors or a combination of colors have rarely been considered by the Supreme Court. One of the few cases, and perhaps the leading one, is Leschen & Son Rope Co. v. Broderick, & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710. In that case, the trade-mark was used upon wire rope, the essential feature of which was "a strand of a different color from the other strands of the rope." The court held this mark invalid upon the ground that it was too wide and indefinite. In doing so, however, the court among other things stated at page 171 of 201 U.S., at page 426 of 26 S.Ct., 50 L.Ed. 710:

"* * * if color be made the essential feature, it should be so defined, or connected with some symbol or design, that other manufacturers may know what they may safely do."

Further on the same page, the court after expressing doubt that mere color could constitute a valid trade-mark stated:

"Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross or a star."

In Hygienic Products Co. v. Coe, 66 App. D.C. 98, 85 F.2d 264, 266, the Court of Appeals for the District of Columbia held in a mandamus proceeding against the Commissioner of Patents that the plaintiff was entitled to register a trade-mark consisting of "a rectangular yellow panel, bounded by contrasting dark blue border, applied to the can or other package containing the goods." In that case, the Examiner had refused the right to register "on the ground that what is claimed as a trade-mark is not in fact a trade-mark, i. e., that it is not such a device as would ordinarily indicate to the public origin or ownership of the goods." In de-

ciding to the contrary, the court held it to be settled law that color may constitute a valid trade-mark, provided it is impressed in a particular design, citing the Leschen case, supra.

In Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, the trade-mark which the court recognized as valid consisted of a red circular plug embedded in the center of a rubber heel. The Supreme Court allowed certiorari solely on the question of the measure of damages recoverable by the plaintiff and reversed on the ground that the rule announced by the lower courts for determining such damages was not adequate. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381. While the question as to the validity of the trade-mark was not considered by the Supreme Court, the fact that it took the case and announced a rule for the measurement of damages would seem to be some indication that the court considered the trade-mark as valid.

The view that the trade-mark in suit is valid is strengthened by the court's finding that "Plaintiff's said package design distinguishes plaintiff's brushless shaving cream and related products from similar products of others." Also in its findings the court recognized plaintiff's trade-mark as a "distinctive package design trade-mark." Moreover defendant in his brief states: "The plaintiff's product is identified by the word trade-mark 'Barbasol' and by the carton design trade-mark hereinbefore referred to." (Reference is to the mark involved in the instant suit.) Thus the findings of the court and defendant's admission leave little, if any, room to question the validity of plaintiff's trade-mark. After all, the essential purpose of a trade-mark is to identify the goods on which it is used and to distinguish such goods from those manufactured and sold by others. That concededly is what plaintiff's mark does.

Defendant's argument as to invalidity is predicated largely upon the erroneous premise, so we think, that plaintiff's design consists solely of the striped border, irrespective of the blue panel. This premise is inconsistent both with the description

of the design and the manner in which it is used. The certificate of registration provides for "colored stripes forming a border for a rectangular panel or field in blue color." We think the field of blue color is an essential part of and must be treated in connection with the colored stripes as forming the design. Confining the design solely to the colored striping, defendant further argues that it is merely a generic term or symbol which plaintiff had no right to appropriate to its exclusive use because the striping is descriptive of and generic to goods usually found in a barber shop. This argument rests on the theory that barber poles with their striped design are descriptive of a brushless shaving cream. We think there is no merit in this contention. A barber pole, so we think, is not descriptive of anything unless it be a barber pole. It is not even descriptive of a barber shop, although no doubt suggestive of such. But even if it be assumed that it is descriptive of a barber shop, it would not be descriptive of a shaving cream any more than of brushes, razors, combs and all the other goods and services usually found in such a shop. Neither do we think there is any merit in defendant's contention that plaintiff's color striping is characteristic of patriotic paraphernalia, and consequently improperly appropriated by plaintiff.

■ We conclude that plaintiff's mark as described and used, with its multi-colored striped border surrounding a blue panel, constitutes a valid trade-mark.

On the question of infringement, Sec. 16, 15 U.S.C.A. 96, provides:

"Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration * * * and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States * * * shall be liable * * *."

It is interesting to note that while Sec. 16 creates a statutory liability for the use of a "reproduction, counterfeit, copy, or colorable imitation" of a registered trade-mark, Sec. 5, 15 U.S.C.A. § 85, provides that no mark shall be registered which "so nearly resemble[s] a registered or known trademark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers * * *."

■ This brings us to the critical issue as to whether plaintiff was entitled to prevail upon proof or a showing of a likelihood of confusion or whether it was required to prove actual confusion, as contended by the defendant and as held by the court below. In this connection we need give no consideration as to whether a likelihood of confusion might be determined alone by a comparison of plaintiff's registered trade-mark with the design employed by defendant alleged to infringe, or whether plaintiff had the additional burden of proving a likelihood of confusion. Whatever might be the responsibility of plaintiff in this respect, the fact is that it introduced proof by a number of expert witnesses, the admissibility of whose testimony is not questioned, who testified without contradiction that the design and color scheme of defendant's label was so similar to that of plaintiff's trade-mark that confusion was certain to result. There is no occasion to relate this testimony. It is sufficient to note that predicated thereon the court found:

"The expert witnesses called on behalf of the plaintiff, consisting of retail druggists, wholesale druggists, and advertising men, testified that to them the defendant's package was confusingly similar to plaintiff's package design trade mark and that in their opinion there was such resemblance between the defendant's package and the plaintiff's package that confusion would result in the trade."

Thus there was unchallenged proof of a likelihood of confusion (as recognized by the court's finding) between plaintiff's product and that of defendant occasioned by the latter's use of a design which was a "colorable imitation" of plaintiff's trademark design. Was plaintiff required to prove actual confusion in order to maintain its cause of action? As noted, the court below answered this question in the

affirmative on the authority of a statement made by this court in the Rytex case, supra, that proof of actual confusion was usually required in a case of trade-mark infringement. Plaintiff argues that this holding is contrary to the great weight of authority and that it was later repudiated by this court in Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 148 A.L.R. 125. We need not decide what Philco did to Rytex, but we are convinced that our holding in the Rytex case pertinent to the instant question was an erroneous statement of law. (Inasmuch as the writer of the instant opinion was also the author of the Rytex opinion, it would seem that he should have the doubtful honor of announcing its repudiation.)

We reach this conclusion after a careful study of many cases and textbooks which generally hold that a plaintiff is only required to show a likelihood of confusion where trade-mark infringement alone is relied upon. Gehl v. Hebe Co., 7 Cir., 276 F. 271, 273; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775; G. H. Mumm Champagne v. Eastern Wine Corporation, 2 Cir., 142 F. 2d 499, 501; Mc Lean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828; Nims, Unfair Competition and Trade Marks, Third Edition, page 863.

We think it may be said that the apparent deviation from this rule in some cases has resulted from the confusion engendered by reliance both upon trade-mark infringement and unfair competition. Such was the situation in the Rytex case. Undoubtedly a different rule applies where unfair competition is asserted, which we need not discuss in the instant case for the reason, as already stated, that plaintiff relies solely upon statutory trade-mark infringement.

The view that proof of actual confusion is not required finds indirect support in the Mishawaka Rubber Co. case, supra, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, even though the case was before the Supreme Court only on the question of the measure of damages. Nevertheless, the court recognized there was no proof of actual confusion. The court stated at page 204 of 316 U.S., at page 1023 of 62 S.Ct., 86 L.Ed. 1381:

"Although there was no evidence that particular purchasers were actually deceived into believing that the heels sold by the respondent were manufactured by the petitioner, the District Court found that there was a 'reasonable likelihood' that some purchases might have been induced by the purchaser's belief that he was obtaining the petitioner's product."

Concluding as we do that the law does not require proof of actual confusion makes it unnecessary to discuss other issues raised on this appeal. It also follows that the court below erroneously dismissed the complaint, even though it did so on the authority of our pronouncement in the Rytex case. A trial court no doubt is confronted with many perplexities in attempting to follow the decisions of a court of review, but we suppose it is rather unique that it be reversed when it has followed the law as announced by such court. In other words, the trial court is helpless when a reviewing court declines to follow its own decision, as we are doing in the instant case.

Just as the court was no doubt misled by our decision in the Rytex case, it seems reasonable to think that counsel for defendant was or might also have been misled. In other words, under the law as announced in that decision it was incumbent upon plaintiff to prove actual confusion. This it failed to do but relied upon its proof of a likelihood of confusion, which we now hold was sufficient. Under the theory on which the case was decided and on which it was tried, insofar as the defendant is concerned, there was no occasion for him to offer proof disputing or denying plaintiff's evidence of a likelihood of confusion. We are of the view that fairness requires that the defendant have this opportunity.

The judgment appealed from is therefore reversed, with directions to grant a new trial.