## CAMPBELL SOUP CO. et al. v. ARMOUR & CO.

### No. 9813.

United States Court of Appeals
Third Circuit.

Argued April 4, 1949.

Decided May 16, 1949.

796

Robert T. McCracken, Philadelphia, Pa. (C. Russell Phillips, Philadelphia, Pa., Edward S. Rogers, Chicago, Ill., Harry D. Nims, New York City, William T. Woodson, Chicago, Ill., on the brief), for appellants.

Walter J. Blenko, Pittsburgh, Pa. (Frederick R. Baird, Chicago, Ill., Blenko, Hoopes, Leonard & Glenn, Pittsburgh, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel; Wm. Clarke Mason, Thomas B. K. Ringe, Philadelphia, Pa., George E. Leonard, Jr., Chicago, Ill., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

Campbell Soup Company and Carnation Company joined as plaintiffs against Armour and Company. They sought an injunction to stop the use by Armour of a red and white label used on some of its food products; likewise, an accounting. The District Court denied relief and the plaintiffs appeal.

The most difficult point in the case is the determination whether federal or state law is to be applied. The parties did not argue this question, perhaps because they did not know what to say. We take it up, not because we are in doubt what to do in this particular litigation, but to record the fact that we are conscious of the problem.

 A case which involves trade-mark infringement only, without reference to the federal statute, is governed by state law. Anheuser-Busch, Inc. v. DuBois Brewing Co., 3 Cir., 1949, 175 F.2d 370. This is perfectly logical, for trade-mark infringement is but one phase of the general subject of unfair competition. As to this subject, too, state law governs. Pecheur Lozenge Co., Inc. v. National Candy Co., Inc., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103. Whether in such a situation the state conflict of laws rule will depart from the general rule of reference to the place of wrong, because of the complications involved in such reference in a multi-state tort, remains to be seen.[1] The rule is clear enough, although the application of it may get bewilderingly complicated.

By contrast, patent litigation is a matter for federal statutes and federal decisions only. There is no common law right of monopoly, and the limited monopoly under the federal patent system is both created and controlled by federal law exclusively. Likewise, where there is a constitutional grant of power to federal courts, as in admiralty and bankruptcy cases, no one seriously doubts that federal courts follow their own course of decision and are not in any way limited by state law.

 The situation we have in this case

---

[1] Compare National Fruit Product Co. v. Dwinell-Wright Co., D.C.Mass.1942, 47 F.Supp. 499, with Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R. 2d 370. See Note, 60 Harv.L.Rev. 1314 (1947).

lies between these two clearly settled areas. Here we have a claim for unfair competition generally and also a claim for trade-mark infringement with reliance upon the federal statute as to registration.[2] The unfair competition matter is, as said above, one for state law.[3] What about the trade-mark infringement in this instance? The trade-mark registration statute expressly confers jurisdiction on federal courts for litigation arising under it.[4] But, on the other hand, federal registration does not create a trade-mark.[5] The trade-mark comes from use, not registration, and the right to it is in the nature of a property right based on common law.[6] When we have an express grant of jurisdiction to federal courts to hear and determine a matter which is essentially one of state property law, to which precedents do we turn, federal or state? Federal courts have, in general, cited and followed their own decisions without, seemingly, being worried about the choice of law to be made in this instance.[7] Perhaps that is because federal courts established a good sized body of precedent in this field prior to 1938 and we have all been just a little bit slow to realize the full impact of Erie Railroad Co. v. Tompkins.[8]

We have stated the problem. Fortunately, this litigation does not drive us into a corner where we must solve it in order to settle the case. The points on which we make our determination are not, we think, subject to serious dispute. We find no difference between state and federal decisions and we are not, therefore, driven to the microscopic examination of state decisions for the last dictum which will assist us to find and apply state law.

It is worth the space involved to call attention to just what it is the plaintiffs claim. Their suit here is based solely upon their claimed exclusive right to the use of red and white in packaging their food products. While their registration describes the red over white as a rectangular design, when the colors appear on their packages they appear in the form of an endless band which runs around the

[2] Federal Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., now replaced by the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq.

[3] On the confusion which may arise when infringement is treated as a federal question and an unfair competition count is pendent to the infringement count, compare National Fruit Product Co. v. Dwinell-Wright Co., D.C.D.Mass.1942, 47 F.Supp. 499, with Bulova Watch Co. v. Stolzberg, D.C.D.Mass.1947, 69 F. Supp. 543.

[4] 15 U.S.C.A. § 97, now replaced by 15 U.S.C.A. § 1121; 28 U.S.C.A. § 41, now Rev. Tit. 28 U.S.C.A. § 1338.

[5] Registration under the 1905 statute is prima facie evidence of ownership of the trade-mark. The Lanham Act of 1946 accords certain other advantages to the registrant, e. g., prima facie validity. 15 U.S.C.A. § 1057(b). See 2 Nims, Unfair Competition and Trade-Marks § 223a (4th ed. 1947).

[6] "* * * in the United States the exclusive right to the use of a trade-mark has always rested and still rests on the common law." 1 Nims, Unfair Competition and Trade-Marks § 185, p. 511 (4th ed. 1947). A trade-mark is "property" in the sense that it is part of the business good will which it symbolizes. See 1 Nims, supra § 198a.

[7] In Pecheur Lozenge Co., Inc. v. National Candy Co., Inc., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103, the Supreme Court granted certiorari because it thought the issue of the applicable law in infringement suits was raised in the case. As it turned out, the issue was not raised. However, in Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, rev'd as to measure of damages only, 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, the question of validity of a registered trade-mark was treated as a matter of federal law. The Courts of Appeals which have passed upon this question have applied federal law. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 1944, 140 F.2d 618; Time, Inc., v. Viobin Corp., 7 Cir., 1942, 128 F. 2d 860, certiorari denied 1942, 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540; Philco Corp. v. Phillips Mfg. Co., 7 Cir., 1943, 133 F.2d 663, 148 A.L.R. 125. The case for applying federal law in this field is fully and persuasively stated in Zlinkoff, Erie Railroad Co. v. Tompkins: In Relation to the Law of Trade-Marks and Unfair Competition, 42 Col.L.Rev. 955 (1942). See also Note 60 Harv.L.Rev. 1315 (1947), recommending legislation to make the substantive question a federal one under the commerce power.

[8] 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

entire container. The Campbell red is not the same as the Carnation red. Indeed, the Carnation red is not the same on all of its products, according to the sample labels offered in the plaintiffs' exhibits. The red used by Armour is a specially blended color. The usual Armour label is white over red instead of red over white, as the plaintiffs use the colors, but in some cases Armour uses the red and white bands vertically.

What the plaintiffs are really asking for, then, is a right to the exclusive use of labels which are half red and half white for food products. If they may thus monopolize red in all of its shades the next manufacturer may monopolize orange in all its shades and the next yellow in the same way. Obviously, the list of colors will soon run out.

■ That a man cannot acquire a trade-mark by color alone has been stated a good many times in decisions and textbooks.[9]

The rule is well stated in James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 1942, 128 F.2d 6, 9:

"Color, except in connection with some definite, arbitrary symbol or in association with some characteristics which serve to distinguish the article as made or sold by a particular person is not subject to trade-mark monopoly."

In Diamond Match Co. v. Saginaw Match Co., 6 Cir., 1906, 142 F. 727, 729, the following language appears which is particularly appropriate here:

"Sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts * * *; but, as a rule, a color cannot be monopolized to distinguish a product * * *.

"The primary colors, even adding black and white, are but few. It two of these colors can be appropriated for one brand of tipped matches, it will not take long to appropriate the rest."

And in an earlier suit by Carnation's predecessor, the Washington Supreme Court said, Pacific Coast Condensed Milk Co. v. Frye & Co., 1915, 85 Wash. 133, 147 P. 865, 869:

"The primary colors are few, and as the evidence shows those suitable for light products, such as milk, are even more limited. To allow them to be appropriated as distinguishing marks would foster monopoly by foreclosing the use by others of any tasty dress."

■ Plaintiffs cite to us a number of cases, however, in which various color combinations as trade-marks have been upheld.[10] Here, too, the law is well settled. Color is a perfectly satisfactory element of a trade-mark if it is used in combination with a design in the form, for example, of a picture or a geometrical figure. The Barbasol case is typical.[11] Here was a pack-

---

[9] See, e. g., Leschen & Sons Rope Co. v. Broderick, 1906, 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710; Samson Cordage Works v. Puritan Cordage Mills, 6 Cir., 1914, 211 F. 603, L.R.A.1915F, 1107; James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 1942, 128 F.2d 6; 1 Nims, Unfair Competition and Trade-Marks § 210b; 2 Callmann, Unfair Competition and Trade Marks § 71.5 (1945).

[10] Those relied upon most heavily are: Barbasol Co. v. Jacobs, 7 Cir., 1947, 160 F.2d 336; G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 1944, 142 F.2d 499, certiorari denied 1944, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575; Winthrop Chemical Co. v. American Pharmaceutical Co., 2 Cir., 1938, 94 F.2d 587; Straus v. Notaseme Hosiery Co., 1916, 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590; O'Connell v. National Water Co., 3 Cir., 1908, 161 F. 545; Ohio Baking Co.

v. National Biscuit Co., 6 Cir., 1904, 127 F. 116, certiorari denied 1904, 195 U.S. 630, 25 S.Ct. 788, 49 L.Ed. 352; Bass, Ratcliff & Gretton, Ltd. v. Feigenspan, C.C.N.J.1899, 96 F. 206. Each illustrates on its facts the importance of a distinct and arbitrary design which includes color in its total effect. Color is only one element in the similarity of the marks held to have infringed.

[11] Barbasol Co. v. Jacobs, 7 Cir., 1947, 160 F.2d 336. The Barbasol case; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, rev'd as to measure of damages only, 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, and Pro-phy-lac-tic Brush Co. v. Abraham & Straus, Inc., D.C.E.D. N.Y.1935, 11 F.Supp. 660, give the broadest support to color designs as trademarks which we found in the cases. All are distinguishable. In the Barbasol

 

age using several colors but in a distinct and arbitrary design. The mere division of a label into two background colors, as in this case, is not, however, distinct or arbitrary, and the District Court so found.

When we say that plaintiffs cannot have exclusive right to a trade-mark of a red and white label, we are by no means denying their right to acquire a trade-mark when the color is combined with other things in a distinctive design. As a matter of fact, the distinctiveness of plaintiffs' packages does not depend upon color alone, although each has been granted registration of a trade-mark described in terms of color. Each has its name in one of the color bands in a uniform and specified type of script. Each has a very distinctive design on its label. Carnation has a small bouquet of carnation flowers. Campbell has a medallion of individual design. Armour, too, does not depend upon color alone. It uses different colors with different products and each has the Armour name in an individual type of script accompanied by the star which it says has been the mark of its goods over many years. In denying the plaintiffs the exclusive use of color alone we are not passing upon the question whether they have acquired trade-marks entitled to protection in the sum total of the combinations which make up their respective labels for their goods.

Finally, there was no unfair competition. Certainly there was not the slightest evidence that Armour passed off its goods as those of the plaintiffs. The Trial Judge found as a matter of fact that "no intelligent purchaser using reasonable care would be confused as between the goods of either plaintiff." [12] There was considerable evidence on this point of confusion and the record is full of reports of a series of tests conducted in different retail stores. We are satisfied with the fact conclusion of the Trial Judge on this point.

A number of other points have been raised in the presentation of this appeal. We do not deem it necessary to go into them and our failure to do so is not an indication that we disagree with the District Court upon them. We think that what is said above is sufficient to show that the decision below was correct.

The judgment of the District Court will be affirmed.

---

case, the color design was distinct and arbitrary. In the Mishawaka case, the dispute concerned a rubber heel whose distinguishing feature was a red dot. The registrant was protected against other manufacturers who used the red dot on heels. The few ways in which one rubber heel may be marked to distinguish it from another, and the obvious similarity in overall appearance of the products there in question distinguish that case from this. The Pro-phy-lac-tic case involved the copying of the plaintiff's yellow container and the word "Pro-phy-lac-tic" in the same red script. The combined effect of color, design and wording in that case is apparent, and distinguishes it from the present case.

[12] In this he was fully within the rule as laid down in Stroehmann Bros. Co. v. Manbeck Baking Co., 1938, 331 Pa. 96, 200 A. 97.