Arnold L. Fein, J.
Plaintiff and defendant are well known luggage manufacturers. The complaint alleges infringement of plaintiff’s United States and New York State registered trademark and unfair competition. The mark relied on by plaintiff consists of a band or strip of extruded vinyl plastic embodying five symmetrical stripes, arranged in alternating colors of red, gold, green, gold and red, positioned on the lid wrap of its luggage. Defendant’s design and positioning are virtually identical, except that its five stripes are red, melon, charcoal, melon and red. Defendant has not registered its design.
The affirmative defenses allege: (1) plaintiff’s trade-mark is invalid, (2) plaintiff’s false representations in advertising, (3) plaintiff’s unfair competition, (4) defendant’s use from at least 1957 through 1962 of its own stripe design, (5) plaintiff’s laches, (6) plaintiff’s threat of lawsuits against the luggage trade and defendant’s customers, (7) plaintiff’s failure to give notice of trade-mark protection, and (8) plaintiff’s inequitable conduct. Defendant’s four counterclaims seek damages for plaintiff’s alleged false representations and unfair competition, and pray that the court order cancellation of the United States and New York State trade-mark registrations of plaintiff’s stripe design.
In June, 1966, plaintiff introduced to the trade a line of luggage bearing its striped design. New York State trade-mark registration issued in September, 1966, and United States trade-mark registration on the Principal Register issued in November, 1969. United States trade-mark registration of plaintiff’s “ Stripes of Fashion ’’ issued in October, 1967.
Plaintiff holds patents on its luggage, issued in July, 1963, and November, 1968, respectively, the first relating to “ softside ” luggage construction, the second relating to luggage construction improvements. Plaintiff’s suit against defendant for infringement of the second patent is pending in the United States District Court.
*648 Plaintiff copyrighted certain advertisements, which in some instances included representations of the stripes on its luggage and also obtained design patents with respect to the draw bolts and hangers used on its luggage.
Although stripes have been used on luggage at various times and by various manufacturers, including defendant’s predecessor, the Amelia Earhart Luggage Company, prior to the development and use by plaintiff of its striped pattern, none of defendant’s luggage had stripes around the lid wrap portion of its luggage, nor had anyone previously used a vinyl extrusion with the colors red, gold, green, gold and red.
Plaintiff has sold many millions of dollars worth of its striped luggage since June, 1966 and has expended substantial sums in advertising its product. Plaintiff’s advertising called attention to its “ Stripes of Fashion.” Plaintiff’s luggage featuring its “Stripes of Fashion” constitutes approximately 40% of its total luggage production.
Section 1127 of title 15 of the United States Code in pertinent part, provides: 1 ‘ The term ‘ trade mark ’ includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others.” Subdivision (a) of section 360 of the General Business Law contains a substantially similar definition.
That plaintiff’s mark has been registered is not dispositive. Registration does not create a trade-mark right greater than that at common law. (Brown & Bigelow v. B. B. Pen Co., 191 F. 2d 939 ; Dell Pub. Co. v. Stanley Pub., 9 N Y 2d 126.) Unlike patents and copyrights, the question of originality does not arise as to trade-marks so long as the mark is sufficiently distinctive really to identify the goods and their source or origin. (Mishawaka Rubber & Woolen Mfg. Co. v. Kresge Co., 119 F. 2d 316, revd. as to measure of damages 316 U. S. 203.) Registration is prima facie evidence of registrant’s ownership of the mark and his exclusive right to use it in commerce. (U. S. Code, tit. 15, § 1115, subd. [a] ; Dell Pub. Co. v. Stanley Pub., supra ; Sonneborn Sons v. Storm Waterproofing Corp., 129 Misc. 796.) It provides constructive notice of registrant’s claim of ownership (§ 1072), and thus facilitates proof of the right to the mark by making a record and providing notice. However, priority of adoption and use of a mark entitled to protection as at common law are still the criteria (Brown & Bigelow v. B. B. Pen Co., supra ; Del Pub. Co. v. Stanley Pub., supra ; Pepsi-Cola Co. v. Coca-Cola Co., 14 N. Y. S. 2d 395).
*649 Absent some other indicia, it is settled that ‘ ‘ color qua color may not be a trademark * * * there cannot be a trademark in color ” (Radio Corp. of Amer. v. Decca Records, 51 F. Supp. 493, 495, 497).
The issue here is not merely the use of color. The question is whether a trade-mark can consist of an alleged distinctive combination of stripes arranged in symmetrical bands of repetitive colors, here red, gold, green, gold and red.
‘' Whether mere color can constitute a valid trade-mark may admit of doubt. Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star ” (Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 171). That case left open whether a particularly colored streak applied to or woven through a wire rope could constitute a valid mark.
The right to register a trade-mark consisting of a rectangular yellow panel banded by a contrasting dark blue border applied to a can or package has been enforced. (Hygienic Prods. Co. v. Coe, 85 F. 2d 264.) An annular band “in various colors * * * upon packages ” has been held a valid trade-mark entitled to protection (Layton Pure Food Co. v. Church & Dwight Co., 182 F. 24), as has a multi-colored striped border consisting of stripes of blue, white, red, white, blue, white, red, white, surrounding a blue panel. (Barbasol Co. v. Jacobs, 160 F. 2d 336.) These cases and others established that a symbol consisting of a distinct and arbitrary design of a particular color or colors is capable of being appropriated as a valid trademark (Mishawaka Rubber & Woolen Mfg. Co. v. Kresge Co., supra ; Mumm Champagne v. Eastern Wine Corp., 142 F. 2d 499 ; Luxor Cab Mfg. Corp. v. Leading Cab Co., 125 Misc. 764, affd. 215 App. Div. 798). That the mark makes the goods more attractive does not prevent its appropriation as a valid trademark (Capewell Horse Nail Co. v. Mooney, 167 F. 575).
However, there is another line of cases, particularly relevant to colored stripes directly applied to the goods, not merely to the packaging, which indicates that when such stripes are primarily decorative and not really indicative of source or origin, there can be no trade-mark. Registration was refused for a striped design for tires consisting of three narrow white concentric rings of aproximately equal width applied to the outer surface of dark sidewall tires, held to be ornamental and decorative as a means of dressing up a car, rather than as a trade-mark indicating origin. (Matter of General Tire & Rubber Co., 404 F. 2d 1396.) As noted in that case, the general public has long *650 been familiar with white walls as a dress or ornamentation for tires. A three-ring white wall is merely a type of ornamentation. Obviously, stripes are a form of ornamentation or decoration adding to the attractiveness of the goods, unlikely to be indicative of source, and thus not the subject of a trade-mark. (Matter of Burgess Battery Co., 112 F. 2d 820,-black and white stripes applied to the exterior of batteries and flashlight cases ; Campbell Soup Co. v. Armour & Co., 175 F. 2d 795,-red and white bands around Campbell soup cans.) As noted in Campbell, the number of colors is limited, and to permit one producer to appropriate a number of such colors in bands or stripes as a trade-mark might tend to create a monopoly and foreclose the use by others of either the colors or the stripes for decorative or other valid purposes. The Campbell court properly distinguished Barbasol (supra) in that it was neither the stripes nor the colors which were found to be the basis for a trade-mark in Barbasol, but rather the use of several colors and stripes in a very distinct and markedly arbitrary design (Barbasol & Co. v. Jacobs, supra). A simple visual comparison of the Barbasol design with that of the Ventura design makes the point.
The mere use of stripes, albeit of particular colors, is neither distinct nor arbitrary. Moreover, the testimony clearly established that Ventura’s design was deemed by it and the trade to be highly ornamental, decorative and stylistic, greatly adding to the salability of Ventura luggage at a substantially higher price than its luggage without stripes. Although no authorities have been found discussing the question in these terms, it is hardly the purpose of trade-mark law to afford protection to a-design affixed to goods primarily to ornament and decorate and make them more attractive so as to increase salability and price, quite out of proportion to the increased cost of manufacturing in affixing the design.
When a customer selects an item because its style or attractiveness is enhanced by ornamentation and decorative symbols the function of the decoration may hardly be regarded as a mark indicating source or origin. It is not an oversimplification to suggest that when the customer selects and pays a higher price for an item because of its ornamentation or decoration, the producer should not be entitled to claim he has affixed it to the product as a mark demonstrating source. In this sense the mark is functional as adding to the dress of the product. As indicated in the thoughtful discussion of functionality in Zippo Mfg. Co. v. Rogers Imports (216 F. Supp. 670), if the mark is functional either because it is utilitarian or because it adds to the dress, style or attractiveness of the item and hence to its *651 salability, there is no trade-mark. A design may be functional in this sense if it will contribute materially to a general sale of the goods, because of the design itself and not because the design indicates a source whose product the customer desires to purchase. (Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F. 2d 614 ; Pagliero v. Wallace China Co., 198 F. 2d 339 ; Penney Co. v. Lee Mercantile Co., 120 F. 2d 949.) As these cases, and others suggest, the question ultimately is one of fact in the particular context of the industry and item involved (Dell Pub. Co. v. Stanley Pub. Co., supra).
It cannot be concluded that a series of decorative stripes of particular colors affixed to luggage, substantially adding to the attractiveness, salability and price of the luggage constitute a valid trade-mark.
However, even if it be assumed that the Ventura stripes constitute a valid trade-mark, the evidence falls far short of proving infringement. In order to succeed, plaintiff must establish the likelihood of confusion.
The record is almost barren of the requisite evidence to show that the striped luggage is associated with the plaintiff in the mind of the buying public or that the public is concerned with who makes the luggage rather than with its appearance and structure. (Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299.)
The history of the competition between the parties is instructive, although it adds lustre to neither.
Defendant purchased the assets of the Amelia Earhart Luggage Company in 1962, including the trade-mark ‘1 Amelia Earhart.” Its line of striped luggage, known as “ Stripes of Elegance ” was discontinued in 1962. In that year, after buying the Earhart assets and deciding against a line of striped luggage, defendant began to manufacture “ softside ” construction luggage without stripes. It did not enter the market with striped luggage, featuring “ Stripes by Earhart”, until March, 1970. Defendant is deemed to have abandoned its trade-mark ‘ ‘ Stripes of Elegance ” with the passage of time between 1962 and 1970, as defendant’s brief recognizes.
Defendant knew of plaintiff’s “ Stripes of Fashion ”, and its design, and trade-mark registration, as did others in the trade, including competitors and wholesale buyers as far back as late 1966. One competitor testified the stripes around the lid served to identify the luggage as plaintiff’s product. Defendant conferred with suppliers, buyers and its own sales people in 1969 and 1970, and looked at from 75 to 100 different renderings of possible stripes “ in order to determine what the most attractive *652 salable stripes would be from a styling standpoint.” A buyer suggested the combination strangely similar to plaintiff’s combination, and ultimately used by defendant: red, melon, black, melon, red, which were standard Amelia Earhart colors since at least 1963. Defendant knew of the similarity between plaintiff’s stripes and defendant’s proposed stripes. The evidence supports defendant’s stated reason for coming back into the market in 1970 with striped luggage, that striped styling is cyclical and was coming back into vogue. It was demonstrated that many other manufacturers were following the same course.
If plaintiff’s mark were valid, there would be little merit to the defense that defendant chose its configuration and colors because ‘ ‘ it was the most attractive of the various color combinations that we looked at and it was also general opinion of the survey we looked at with the buyers and salesmen who came to discuss this matter.” The only difference between plaintiff’s striped pattern and that ultimately chosen by defendant is that defendant’s center stripe is green-black in color, identified by defendant as charcoal, while plaintiff’s center stripe is dark green, and defendant’s “melon” stripes are a different shade of yellow than plaintiff’s gold stripes.
“ What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled. ” (McLean v. Fleming, 96 U. S. 245, 251.)
There is a similarity between the stripes of plaintiff and those of defendant, although they are distinguishable. However there is a marked distinction in the general appearance of both lines of luggage. Generally, the over-all appearance of plaintiff’s luggage is superior. It is manifestly higher styled and it is more expensively priced. It has a deluxe interior which defendant’s luggage lacks. The hardware used by each differs markedly. The name Ventura appears on plaintiff’s luggage and hang tags. Defendant’s luggage bears an Amelia Earhart metal nameplate embedded in the striped pattern itself. Hang tags attached to defendant’s luggage bear the names “Amelia Earhart Luggage ” and “ Stripes by Earhart.” The packing eases of each party are plainly marked with the identity of each. There is no likelihood of confusion.
Particularly, the nameplate and hang tags appearing on defendant’s luggage and its unique hardware dispel any likeli *653 hood of confusion or mistake between the goods of the parties, notwithstanding the similarity of the stripes.
The remedy against trade-mark infringement is available only when plaintiff can show a likelihood of confusion, mistake, or deception arising in the market as a result of defendant’s use of a mark registered to plaintiff (U. S. Code, tit. 15, § 1114, subd. [1] ; General Business Law, § 368-b ; B. & L. Sales Assoc. v. Daroff & Sons, 421 F. 2d 352). Plaintiff’s cause of action for infringement must fail. There is neither proof of a valid mark nor of infringement. (Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 153 F. 2d 662 ; B. & L. Sales Assoc. v. Daroff & Sons, supra.)
While defendant copied plaintiff’s stripes very closely, its conduct does not amount to unfair competition in view of the over-all distinguishing characteristics, the metal nameplate; the hang tags and the different hardware. Defendant did not appropriate to itself plaintiff’s trade-mark or the good will that it represents. There is no evidence of “palming off.” Defendant’s luggage is clearly marked in a variety of ways to show source or origin, in an obvious attempt to feature the Amelia Earhart name in conjunction with the ‘ ‘ Stripes by Earhart ’ ’ slogan. This is very often the judicial remedy even where the possibility of confusion with a valid mark is found.
The counterclaims based upon plaintiff’s alleged false representations in its advertisements to the effect that plaintiff’s stripes were patented and copyrighted are without merit. A fair reading of the advertisements establishes that such notices referred to plaintiff’s line of luggage rather than to its stripes. The word ‘ ‘ design ’ ’ in the advertisements apparently means design patents, referable to plaintiff’s line of luggage, not merely to its stripes. The meaning of the words, “ design copyright ”, on plaintiff’s hang tags is not clear. There was no proof of what was intended or that plaintiff had such rights, if they exist. However plaintiff had patents, copyrights, and design patents, on and referable to its luggage, or to advertisements in connection therewith. It is not necessary to pass upon the validity of these claims. Although these claims are somewhat grandiose and unclear, there is no proof of bad faith on the part of plaintiff. Nor is there proof that the alleged false representations deceived wholesale purchasers into believing they could legally sell striped luggage only if purchased from plaintiff. Defendant’s outrage is curious in the face of its own copying. It is not a substitute for proof that defendant sustained or was likely to sustain damages. Plaintiff’s warnings to the *654 trade have not been shown to be in bad faith or to seek an unfair competitive advantage. Plaintiff had a registered mark. The question of its validity is a close one. Defendant’s stripes consciously chosen closely simulate plaintiff’s stripes. It has not been established that plaintiff’s acts, including its president’s threat to sue a retailer for infringement, constituted unfair competition or unlawful interference with defendant’s business. In context there was a sharp question as to possible confusion of the goods from the manner in which the retailer was displaying and selling them.
Plaintiff’s complaint and defendant’s counterclaims are dismissed. Judgment may be entered accordingly.